# UNITED STATES *v.* ERIKA, INC.

No. 80–1594.   Argued March 1, 1982—Decided April 20, 1982

POWELL, J., delivered the opinion for a unanimous court.

*Edwin S. Kneedler* argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Acting Solicitor General Wallace, Acting Assistant Attorney General Schiffer, David M. Cohen, Dwight D. Meier,* and *Robert P. Jaye.*

*Stephen H. Oleskey* argued the cause for respondent. With him on the brief was *Timothy H. Gailey.**

JUSTICE POWELL delivered the opinion of the Court.

The question is whether the Court of Claims has jurisdiction to review determinations by private insurance carriers of the amount of benefits payable under Part B of the Medicare statute.

I

Part B of the Medicare program, 79 Stat. 301, as amended, 42 U. S. C. § 1395j *et seq.* (1976 ed. and Supp. IV), is a federally subsidized, voluntary health insurance system for persons who are 65 or older or who are disabled. The companion Part A Medicare program covers institutional health costs such as hospital expenses. Part B supplements Part A's coverage by insuring against a portion of some medical expenses, such as certain physician services and X-rays, that are excluded from the Part A program. Eligible individuals pay monthly premiums if they choose to enroll in Part B. These premiums, together with contributions from the Fed-

---

*\*Frederick B. Bellamy* and *Alan G. Gilchrist* filed a brief for the American Academy of Family Physicians as *amicus curiae* urging affirmance.

eral Government, are deposited in the Federal Supplementary Medical Insurance Trust Fund that finances the Part B program. See §§ 1395j, 1395r, 1395s, 1395t, and 1395w (1976 ed. and Supp. IV).

The Secretary of Health and Human Services administers the Medicare program. "In order to provide for the administration of the benefits . . . with maximum efficiency and convenience for individuals entitled to benefits," the Secretary is authorized to assign the task of paying Part B claims from the Trust Fund to private insurance carriers experienced in such matters.[1] § 1395u. See H. R. Rep. No. 213, 89th Cong., 1st Sess., 46 (1965); S. Rep. No. 404, 89th Cong., 1st Sess., 53 (1965). After Part B enrollees receive medical care, they (or, after their assignment, their medical providers) bill the private insurance carrier.

If the carrier determines that a claim meets all Part B coverage criteria such as medical necessity and reasonable cost, the carrier pays the claim out of the federal funds. See 42 U. S. C. § 1395u; *Schweiker* v. *McClure, ante,* p. 188. If the carrier decides that reimbursement in full is not warranted, the statute and the regulations designate an appeal procedure available to dissatisfied claimants. All may request a "review determination," which is a *de novo* written review hearing before a carrier employee different from the one who initially decided the claim. Claimants who remain dissatisfied and whose appeal involves more than $100 then may petition for an oral hearing before a hearing officer designated by the carrier. See 42 U. S. C. § 1395u(b)(3)(C); 42 CFR § 405.820 (1980). Unless the carrier or the hearing officer decides to reopen the proceeding, the hearing officer's decision is "final and binding upon all parties to the hearing . . . ." § 405.835. Neither the statute nor the Secretary's regulations make further provision for review of hearing officer decisions.

---

[1] For example, the private insurance carrier involved in this suit is the Prudential Insurance Company of America.

## II

Respondent, a major distributor of kidney dialysis supplies, sold its products to institutions and individuals. About half of such sales were covered by the Part B program. Persons purchasing dialysis supplies assigned their Medicare Part B claims to respondent. See 42 U. S. C. § 426(e); § 426–1 (1976 ed., Supp. IV) (establishing Part B coverage for renal disease). Respondent in turn billed the Prudential Insurance Company of America, the private insurance carrier for the New Jersey area in which it is based. According to its contract with the Secretary, Prudential was required to reimburse 80% of what it determined to be a "reasonable charg[e]" for these supplies. See § 1395*l*(a) (1976 ed., Supp. IV).

Prudential interpreted the relevant statute and regulations to define the "reasonable charges" for respondent's products to be their catalog price as of July 1 of the *preceding* calendar year.[2] For example, Prudential reimbursed respondent's Part B invoices from July 1, 1975, to June 30, 1976, on the basis of prices contained in respondent's July 1, 1974, catalog.

Prudential began reimbursing respondent on this basis in 1974. Early in 1976 the respondent learned about the grounds for Prudential's partial reimbursement of its in-

---

[2] Claimants' reimbursable "reasonable charge" cannot exceed the "prevailing charge" calculated for "the locality." 42 U. S. C. § 1395u(b)(3) (1976 ed. and Supp. IV). In an effort to control the extent to which the Medicare program contributes to the inflation of medical costs, the "prevailing charge" formula is based on typical local rates for the *preceding* year. See 42 CFR § 405.504(a)(2)(i) (1980) (defining "prevailing charge" as the fee that "would cover 75 percent of the customary charges made for similar services in the same locality during the calendar year *preceding* the start of the 12-month period (beginning July 1 of each year) in which the claim is submitted or the request for payment is made") (emphasis added). Prudential defined respondent's own catalog price as the relevant "prevailing charge" because respondent was virtually the only provider of dialysis supplies within Prudential's locality.

voices. At that time it requested Prudential to adjust past and future reimbursements to reflect price increases effective after July 1, 1974. Prudential agreed to adjust prospectively the basis for payment for the drug heparin, the price of which apparently had increased sharply. Cf. U. S. Dept. of HEW, Medicare Part B Carriers Manual § 5010.2 (1980) (permitting adjustments to customary charges in "highly unusual situations where equity clearly indicates that the increases are warranted"). But the carrier refused to make either retroactive adjustments for heparin or any adjustments at all for other products.[3]

Respondent sought review of this refusal before one of Prudential's hearing officers pursuant to 42 U. S. C. § 1395 u(b)(3)(C). The hearing officer affirmed Prudential's decision. Respondent then brought the instant action against the United States in the Court of Claims seeking reimbursement on the basis of its current charges, asserting that Prudential's refusal to set "reasonable charges" on the basis of respondent's interim price increases contravened the Fifth Amendment as well as the Social Security Act and applicable regulations. The Court of Claims ruled that respondent's suit was within the jurisdictional grant of the Tucker Act, 28 U. S. C. § 1491, which permits the Court of Claims to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department." 225 Ct. Cl. 252, 256–262, 634 F. 2d 580, 584–588 (1980) (en banc), opinion clarified, 225 Ct. Cl. 273, 647 F. 2d 129 (1981).[4] On the merits, the court decided that Prudential's calculation of re-

---

[3] Respondent claimed that its July 1, 1974, catalog contained a substantial printing error for one product. This claim has been settled and is no longer at issue.

[4] The court added: "The plaintiff also asserts we have jurisdiction under section 10(b) of the Administrative Procedure Act, 5 U. S. C. § 703. In view of our holding that we have jurisdiction under the Tucker Act, we find

spondent's maximum allowable charge erred in several respects. 225 Ct. Cl., at 262–268, 634 F. 2d, at 588–590. The court remanded the case to Prudential for redetermination of these matters.[5] We granted certiorari to determine whether the Court of Claims has jurisdiction over suits of this kind. 451 U. S. 982 (1981). We now reverse.

## III

The United States argues that Congress, by enacting the Medicare statute, 42 U. S. C. § 1395j *et seq.* (1976 ed. and Supp. IV), specifically precluded review in the Court of Claims of adverse hearing officer determinations of the amount of Part B payments. We agree.[6]

Our lodestar is the language of the statute. Congress has specified in the Medicare statute that disputed carrier Part B determinations are to be subject to review in "a fair hearing

it unnecessary to consider this additional basis of jurisdiction. *But cf. Califano* v. *Sanders,* 430 U. S. 99 (1977)." 225 Ct. Cl., at 256, n. 5, 634 F. 2d, at 585, n. 5.

Respondent's arguments were directed in large measure against the actions of Prudential. Prudential, however, was not made a party to this litigation. The Secretary's regulations specify that the Administrator of the Health Care Financing Administration "is the real party of interest in any litigation involving the administration of the [Medicare] program." 42 CFR § 421.5(b) (1980).

[5] The court found respondent's constitutional claims "insubstantial," citing *Califano* v. *Aznavorian,* 439 U. S. 170 (1978); *Mathews* v. *Eldridge,* 424 U. S. 319 (1976); and *Dandridge* v. *Williams,* 397 U. S. 471 (1970). 225 Ct. Cl., at 268, 634 F. 2d, at 591. One judge wrote separately to express regret regarding the "short shrift" that the majority gave these claims. *Id.,* at 272, 634 F. 2d, at 593. He reasoned that "Erika may have, probably has, made its constitutional allegations mostly to aid our jurisdiction, and we should not spurn this aid." *Id.,* at 272, 634 F. 2d, at 594 (Nichols, J., concurring). Respondent does not press these constitutional claims before us.

[6] As we find the language of the statute dispositive, we do not reach the Government's alternative contentions that 42 U. S. C. § 405(h) controls or that the respondent has failed to show that the United States unequivocally has waived sovereign immunity.

by the *carrier*, in any case where the amount in controversy is $100 or more . . . ."  42 U. S. C. § 1395u(b)(3)(C) (emphasis added).[7]  See *Schweiker* v. *McClure, ante,* p. 188.  Congress also provided explicitly for review by the *Secretary* of "determination[s] of whether an individual is *entitled* to benefits under part A or part B, and [of] the determination of the *amount* of benefits under *part A* . . . ."  § 1395ff(a) (emphasis added).  Individuals dissatisfied with the Secretary's decision on such matters are granted the right to additional administrative review,[8] together with a further option of judicial review,[9] in two instances only: when the dispute relates to their eligibility to participate in either Part A or Part B, and when the dispute concerns the amount of benefits to which they are entitled under Part A.  § 1395ff(b).[10]

---

[7] Although the statute in terms affords this right of review only to an "individual enrolled under [Part B]," 42 U. S. C. § 1395u(b)(3)(C), the Secretary's regulations make clear this right extends to *suppliers* of Part B services to whom individual beneficiaries have assigned their claims.  42 CFR § 405.801(a) (1980).

[8] See 42 U. S. C. § 405(b); 20 CFR part 404, subpart J (1981).

[9] See 42 U. S. C. § 405(g).

[10] "§ 1395ff.  Determinations of Secretary

"(a) Entitlement to and amount of benefits

"The determination of whether an individual is entitled to benefits under part A or part B, and the determination of the amount of benefits under part A, shall be made by the Secretary in accordance with regulations prescribed by him.

"(b) Appeal by individuals

"(1) Any individual dissatisfied with any determination under subsection (a) of this section as to—

"(A) whether he meets the conditions of section 426 or section 426a of this title [which set forth eligibility requirements to be satisfied before an individual is permitted to participate in Part A of the Medicare program], or

"(B) whether he is eligible to enroll and has enrolled pursuant to the provisions of part B of [the Medicare program] . . . , or,

"(C) the amount of the benefits under part A (including a determination where such amount is determined to be zero)

Section 1395ff thus distinguishes between two types of administrative decisions: eligibility determinations (that decide whether an individual is 65 or over or "disabled" within the meaning of the Medicare program) and amount determinations (that decide the amount of the Medicare payment to be made on a particular claim). Conspicuously, the statute fails to authorize further review for determinations of the amount of Part B awards. In the context of the statute's precisely drawn provisions, this omission provides persuasive evidence that Congress deliberately intended to foreclose further review of such claims. See, *e. g.*, *Lehman* v. *Nakshian*, 453 U. S. 156, 162–163 (1981); *Fedorenko* v. *United States*, 449 U. S. 490, 512–513 (1981).

## IV

The legislative history confirms this view and explains its logic. The Committee Reports accompanying the original enactment of the Medicare program stated that the supplemental payments under the Part B program generally were expected to be smaller than those under the primary Part A program. Apparently, it was for this reason that the proposed bill did not provide for judicial review of "a determination concerning the amount of benefits under [P]art B . . . ." S. Rep. No. 404, 89th Cong., 1st Sess., 55 (1965).[11]

shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title."

[11] With respect to "Appeals" the Senate Committee Report stated:

"The committee's bill provides for the Secretary to make determinations, under both the hospital insurance plan [Part A] and the supplementary plan [Part B], as to whether individuals are entitled to [Part A] hospital insurance benefits or [Part B] supplementary medical insurance benefits and for hearings by the Secretary and judicial review where an individual is dissatisfied with the Secretary's determination. Hearings and judicial review are also provided for where an individual is dissatisfied with a determination as to the amount of benefits under the [Part A] hospital in-

This intent to limit the review of the generally smaller Part B awards was reiterated when Congress amended § 1395ff(b) in 1972.[12]   When introducing this amendment, Senator Bennett stated that it was intended to clarify the intent of existing law, which "greatly restricted" the appealability of Medicare decisions "in order to avoid overloading the courts with quite minor matters."   118 Cong. Rec. 33992 (1972).   The Senator explained that the amendment would assure that judicial review would be available as to questions of "eligibility

surance plan if the amount in controversy is $1,000 or more.   (Under the supplementary plan [Part B], carriers, not the Secretary, would review beneficiary complaints regarding the amount of benefits, and *the bill does not provide for judicial review of a determination concerning the amount of benefits under part B where claims will probably be for substantially smaller amounts than under part A.*)   Hospitals, extended care facilities, and home health agencies would be entitled to hearing and judicial review if they are dissatisfied with the Secretary's determination regarding their eligibility to participate in the program.   *It is intended that the remedies provided by these review procedures shall be exclusive.*"   S. Rep. No. 404, 89th Cong., 1st Sess., 54–55 (1965) (emphasis added).   See also H. R. Rep. No. 213, 89th Cong., 1st Sess., 47 (1965).

Congressional limitation of the amount of procedure available to Part B claimants must be understood in light of the magnitude of the Part B program.   In 1980, for instance, 158 million Part B claims were processed. *Schweiker* v. *McClure, ante,* at 190.

[12] As originally enacted, this section provided:

"Any individual dissatisfied with any determination under subsection (a) of this section as to *entitlement under part A or part B, or as to amount of benefits under part A where the matter in controversy is $100 or more,* shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title, and, *in the case of a determination as to entitlement or as to amount of benefits where the amount in controversy is $1,000 or more,* to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title."   79 Stat. 330, as set forth in 42 U. S. C. § 1395ff(b) (1970 ed.) (emphasis added).

The 1972 amendment replaced the emphasized language, including the first word "entitlement," to create the current wording quoted in n. 10, *supra.*

to any benefits of medicare but not [as] to decisions on a claim for payment for a given service." [13]   *Ibid.*

The Conference Committee advanced an identical explanation for this amendment:

### "CLARIFICATION OF MEDICARE APPEAL PROCEDURES

"Amendment No. 561: The Senate amendment added a new section to the House bill which would make clear that there is no authorization for an appeal to the Secretary or for judicial review on matters solely involving amounts of benefits under Part B, and that insofar as Part A amounts are concerned, appeal is authorized only if the amount in controversy is $100 or more and judicial review only if the amount in controversy is $1,000 or more.

"The House recedes."   H. R. Conf. Rep. No. 92–1605, p. 61 (1972).

---

[13] Senator Bennett's entire opening statement was as follows:

". . . Mr. President, the purpose of the amendment is to make sure existing law, which gives the right of a person to go to court on the question of eligibility to receive welfare, is not interpreted to mean he can take the question of the Federal claim to court.   If he did we would never have an end to it.   This is to reconfirm the original intention of the law that the courts can determine only eligibility.

"The situations in which medicare decisions are appealable to the courts were intended in the original law to be greatly restricted in order to avoid overloading the courts with quite minor matters.   The law refers to 'entitlement' as being an issue subject to court review and the word was intended to mean eligibility to any benefits of medicare but not to decisions on a claim for payment for a given service.

"If judicial review is made available where any claim is denied, as some court decisions have held, the resources of the Federal court system would be unduly taxed and little real value would be derived by the enrollees. The proposed amendment would merely clarify the original intent of the law and prevent the overloading of the courts with trivial matters because the intent is considered unclear."   118 Cong. Rec. 33992 (1972).

The Senate agreed to the amendment without further discussion.   *Ibid.*

These expressions of legislative intent unambiguously support our reading of the statutory language. Respondent advances no persuasive evidence of contrary congressional will. In such circumstances, our task is at an end.[14]

The judgment of the Court of Claims is reversed.

*So ordered.*

---

[14] In addition to its substantive money claim assertedly arising under the Medicare statute, respondent argues that it derives such a substantive claim from an implied-in-fact contract with the United States, or as a third-party beneficiary to Prudential's contract with the United States. These arguments fail because any such contracts with the United States necessarily would include the statutory preclusion of review of hearing officers' determinations regarding the amount of Part B benefits.

In response to questioning at oral argument, respondent's counsel answered that it was asserting a *constitutional* right to judicial review of Prudential's Part B determination. Tr. of Oral Arg. 39. Respondent, however, neither argued this ground in the Court of Claims, included it among the questions presented to this Court in its brief in opposition or in its brief on the merits, nor devoted any substantial briefing to it. We consequently do not address the issue. See this Court's Rules 34.2 and 22.1; cf. *Neely* v. *Martin K. Eby Construction Co., Inc.,* 386 U. S. 317, 330 (1967).