**SEA–LAND SERVICE, INC.**

v.

**The UNITED STATES.**

**No. 248–81L.**

United States Court of Claims.

July 14, 1982.

Russ Winner, Anchorage, Alaska, attorney of record, for plaintiff. Graham & James, Anchorage, Alaska, of counsel.

Michael W. Neville, Washington, D. C., with whom was Asst. Atty. Gen. Carol E. Dinkins, Washington, D. C., for defendant.

Before DAVIS, NICHOLS and SMITH, Judges.

## ON DEFENDANT'S MOTION TO DISMISS

SMITH, Judge:

The present case comes before us pursuant to our jurisdiction under the Federal Water Pollution Control Act, *as amended*

(FWPCA).[1] Plaintiff's claims have been transferred to this court from the United States District Court for the District of Alaska (the district court).[2]

The United States Coast Guard discovered a serious oil spill in the waters of Cook Inlet, near Anchorage, Alaska, on June 8, 1976. The Coast Guard took measures to clean up the spill, incurring $17,236.74 in costs. Sea-Land, the operator of a fuel storage facility in the vicinity, alleges that it also incurred considerable cleanup costs, amounting to $83,233.96.

After investigation, the Coast Guard determined that Sea-Land was the source of the spill and imposed against Sea-Land a civil penalty of $3,500, pursuant to section 1321(b)(6) of the FWPCA.[3] Sea-Land paid the civil penalty under protest, but refused to reimburse the Coast Guard's expenses of cleaning up the spill. The Government thereupon filed suit in the district court for recovery of the $17,236.74 in Coast Guard cleanup costs. Sea-Land counterclaimed (1) for refund of the $3,500 civil penalty and (2) for Sea-Land's cleanup costs of $83,233.96.

On December 2, 1980, the district court issued an order which partially decided only the Government's claim. The statutory basis for the Government reimbursement claim provides:[4]

(2) Except where an owner or operator of an onshore facility can prove that a discharge was *caused solely by* (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Govern-ment, or (D) *an act or omission of a third party without regard to whether any such act or omission was or was not negligent,* or any combination of the foregoing clauses, such owner or operator of any such facility from which oil or a hazardous substance is discharged in violation of subsection (b)(3) of this section shall be liable to the United States Government for the actual costs incurred under subsection (c) of this section for the removal of such oil or substance by the United States Government in an amount not to exceed $50,000,000 except that where the United States can show that such discharge was the result of willful negligence or willful misconduct within the privity and knowledge of the owner, such owner or operator shall be liable to the United States Government for the full amount of such costs. The United States may bring an action against the owner or operator of such facility in any court of competent jurisdiction to recover such costs. * * * [Emphasis supplied.]

Plaintiff interposed the defense that a third party was solely responsible, naming the builder of its storage facilities. The district court rejected this defense in its order, holding that "the Clean Water Act [*i.e.*, the FWPCA] holds the owner who selected and hired the building contractor liable and the 'third party' exception is inapplicable."[5] However, the district court also held that "the Government has failed to show that as a matter of law the spilled oil belonged to

1. 33 U.S.C. § 1321 (1976 & Supp. III 1979). Sections of the act will refer to the U.S. Code.

2. *United States v. Sea-Land Service, Inc.*, No. A79–150 Civ. (D. Alaska Mar. 25, 1981) (order transferring counterclaims).

Plaintiff's claims were asserted as counterclaims in the Government's district court action. In general we will refer to the parties as Sea-Land and the Government, respectively, to avoid confusion with the alignment of the parties in the district court. However, all references to plaintiff and defendant in this opinion will designate the parties as they are aligned in this court, *i.e.*, the United States as defendant.

3. The FWPCA, § 1321(b)(6)(A), reads in pertinent part:

"Any owner, operator, or person in charge of any onshore facility or offshore facility from which oil or a hazardous substance is discharged in violation of paragraph (3) of this subsection shall be assessed a civil penalty by the Secretary of the department in which the Coast Guard is operating of not more than $5,000 for each offense."

4. 33 U.S.C. § 1321(f)(2).

5. *United States v. Sea-Land Service, Inc.*, No. A79–150 Civ., slip op. at 6 (D. Alaska Dec. 2, 1980) (order denying defendant's motion for summary judgment).

[Sea-Land]." [6]  Therefore, summary judgment in the Government's favor was "denied on the issue of defendant's ultimate liability" [7] and the case was continued for trial on the question of the oil's ownership alone.

Sea-Land's two counterclaims were not addressed in the December 2, 1980, decision, and on March 21, 1981, the district court ordered them both transferred to the Court of Claims. [8]  Here, the Government has moved to dismiss both claims.  The Government argues, first, that this court has no jurisdiction over claims for refund of the civil penalty amount.  Sea-Land insists that we have implicit jurisdiction under the Tucker Act.  Second, with respect to Sea-Land's cleanup costs, the Government argues that the district court's decision on the "third party" defense is a final judgment on that issue which precludes relitigation in this court, under the doctrine of collateral estoppel.  Sea-Land answers that no final judgment has been entered.  We agree with the Government that we do not have civil penalty jurisdiction and find for plaintiff on the issue of the finality of the defense judgment.

## I.

■  The Court of Claims is expressly given jurisdiction over only one facet of the FWPCA, recovery of owner cleanup costs against the United States, in subsection (i)(1).  It provides: [9]

> In any case where an owner or operator of a vessel or an onshore facility or an offshore facility from which oil or a hazardous substance is discharged in violation of subsection (b)(3) of this section acts to remove such oil or substance in accordance with regulations promulgated

pursuant to this section, such owner or *operator shall be entitled to recover the reasonable costs incurred in such removal* upon establishing, *in a suit* which may be brought against the United States Government *in the United States Court of Claims,* that such discharge was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) an act or omission of a third party without regard to whether such act or omission was or was not negligent, or of any combination of the foregoing causes.  [Emphasis supplied.]

The general jurisdiction provision of the FWPCA provides, conversely: [10]

> The several district courts of the United States are invested with jurisdiction for any actions, *other than actions pursuant to subsection (i)(1) of this section,* arising under this section.  * * *  [Emphasis supplied.]

The language of the statute, therefore, clearly allocates exclusive jurisdiction of subsection (i)(1) actions to the Court of Claims and exclusive jurisdiction of all other section 1321 actions to the district courts.  This allocation is consistent with the areas in which this court normally exercises jurisdiction.

■  Sea-Land argues that the Tucker Act, which grants the Court of Claims general jurisdiction over "any claim against the United States founded * * * upon * * * any Act of Congress," [11] implicitly gives the court jurisdiction over a claim for refund of the civil penalty.  We cannot agree.  Implications from the Tucker Act cannot override the specific allocation by Congress of jurisdiction elsewhere. [12]  The claim for re-

6.  *Id.*

7.  *Id.,* slip op. at 7.

8.  28 U.S.C. § 1406(c) provides for transfer of "a case within the exclusive jurisdiction of the Court of Claims."

9.  33 U.S.C. § 1321(i)(1).

10.  33 U.S.C. § 1321(n).

11.  28 U.S.C. § 1491 (1976).

12.  *See, e.g., United States v. Erika, Inc.,* 456 U.S. ——, ——, 102 S.Ct. 1650, 1654, 72 L.Ed.2d 12 (1982).  In *Erika* the Supreme Court held that the applicable statute "specifically precluded review in the Court of Claims" by providing for review elsewhere.

fund of the civil penalty must be transferred back to the district court.[13]

## II.

Our jurisdiction is properly invoked for the recovery of Sea-Land's cleanup costs. The question for us is whether the claim has already been litigated and determined by the district court's December 2, 1980, order. It can readily be seen from the portions quoted above of subsections (f)(2), under which the Government sought reimbursement in the district court, and (i)(1), under which Sea-Land seeks relief here, that they are identical in their provision for the third party defense. The legal standard governing both must be one and the same. Without identity of legal standard, the obvious symmetry of subsections (f)(2) and (i)(1) would be destroyed.[14] It therefore appears likely, under the principles enumerated in *Red Lake Band v. United States*,[15] that collateral estoppel would bar relitigation of the "third party" defense in this court if the district court had entered a final judgment thereon.[16]

 However, while the district court's order unequivocally holds that the "third party" defense is inapplicable to Sea-Land, the undecided issue of ownership of the oil potentially renders the third party defense holding moot. If the Government fails to prove that the oil belonged to Sea-Land, the district court would have had no occasion to consider a defense in subsection (f)(2). In such a case, the facts and law bearing on that determination would still be relevant to *our* inquiry under subsection (i)(1), but the district court's defense holding would be dicta.

In the circumstances, our best course is to stay proceedings in this court until the district court has completed its consideration of this aspect of the case and has rendered a final judgment on the question of ultimate liability.[17] At that time the collateral estoppel question will be ripe and we will be in a better position to consider the case as a whole.

We therefore conclude, after careful consideration of the parties' submissions and without oral argument, that plaintiff Sea-Land's claim for recovery of the civil penalty imposed against it under 33 U.S.C. § 1321(b)(6) must be and it is transferred to the United States District Court for the District of Alaska, pursuant to 28 U.S.C. § 1506; and that plaintiff Sea-Land's claim for recovery of cleanup costs under 33 U.S.C. § 1321(i)(1) is stayed pending entry of a final judgment on ultimate liability by the said district court, and the parties are further instructed to inform the court immediately upon entry of such judgment. Defendant's motion to dismiss is *pro tanto* denied.

---

13. 28 U.S.C. § 1506 (1976).

14. *See Reliance Ins. Co. v. United States*, 230 Ct.Cl. ——, ——, 677 F.2d 844, 846–47 (1982).

15. *Red Lake Band v. United States*, 229 Ct.Cl. ——, ——, 667 F.2d 73, 74–75 (1981).

16. *See General Motors Corp. v. United States*, 213 Ct.Cl. 706, 707–08 (1977) (order) (Government collaterally estopped by district court judgment on cause of discharge).

17. While Sea-Land has improperly failed to allege as a fact that the source of the discharge of oil was its facilities, *Yankee Metal Products, Inc. v. United States*, 209 Ct.Cl. 770, 772 (1976) (order), it is clear that this failure is due to its reluctance to concede an issue now disputed at trial in the district court. This is further indication that Sea-Land's claim is not ripe for decision by this court at this time.