**BIO–MEDICAL APPLICATIONS OF PROVIDENCE, INC. d/b/a Artificial Kidney Center of Rhode Island, et al., Plaintiffs,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Resources, Defendant.**

**Civ. A. No. 83–1397.**

United States District Court, District of Columbia.

Sept. 25, 1984.

James L. Quarles, III, Hale & Dorr, Washington, D.C., Stephen H. Oleskey, Hale & Dorr, Boston, Mass., for plaintiffs.

Richard K. Willard, Acting Atty. Gen., Lewis K. Wise and Hermes Fernandez, U.S. Dept. of Justice, Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, Asst. U.S. Atty., Juan A. Del Real, Gen. Counsel, Ann T. Hunsaker, Asst. Gen. Counsel, Washington, D.C., and Gerard Keating for Dept. of Health & Human Services.

CHARLES R. RICHEY, District Judge.

The Court has before it defendant's motion to dismiss, plaintiffs' motion for summary judgement, and defendant's cross-motion for summary judgement, as well as memoranda in support thereof and in opposition thereto. Plaintiffs in this case challenge a rule issued in December 1982 by the defendant Secretary, released initially in a Health Care Financing Administration (HCFA) intermediary letter, and then later published as a revision to the Medicare Renal Dialysis Facility Manual (Manual). This new rule provided that clotting time tests, tests sometimes used to monitor patients undergoing kidney dialysis, were not to be billed separately from the basic dialysis charge, thus affecting the amount of reimbursement a Medicare provider is entitled to receive.

Plaintiffs, operators of medical facilities which provide kidney maintenance dialysis to patients suffering from chronic kidney failure, do not seek to make a claim for additional reimbursement with this action. Rather, plaintiffs allege that the Secretary's promulgation of this rule violates the notice and comment requirements of the Administrative Procedure Act. 5 U.S.C. § 551, *et seq.* Plaintiffs ask that this Court declare the rule void and remand the issue back to the Secretary with an order compelling her to follow the procedures outlined in the APA. The defendant argues that this action is at bottom a claim for reimbursements, and therefore this Court's jurisdiction is precluded by 42 U.S.C. § 405(h). Alternately, she claims that the rule was interpretive in nature and therefore not subject to notice and comment.

THE STATUTORY BACKGROUND

The Medicare program established by Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*, provides funds for medical care for the aged and disabled. Medicare is divided into two separate sections, Part A and Part B. Part A of Medicare contains the hospital insurance benefits program, 42 U.S.C. §§ 1395c—1395i-2, and pays the costs of inpatient hospital services and related post-hospital services. *Id.* §§ 1395c, 1395d. Individuals generally are eligible for Part A coverage by establishing eligibility for monthly social security benefits. 42 U.S.C. § 426.

Providers of services under Part A are usually reimbursed for their costs by a fiscal intermediary designated by the provider and the Secretary. 42 U.S.C. § 1395h; 42 C.F.R. § 421.103. The Secretary has delegated responsibility for the administration of Medicare to HCFA.

Such reimbursements are made on the basis of "reasonable cost." 42 U.S.C. §§ 1395f(b), § 1395x(v)(1). Part A contains provisions for both administrative and judicial review of disputes over reimbursement amount determinations made by the intermediary. *Id.* §§ 1395*oo* (a), 1395*oo* (f)(1).

Part B of Medicare, 42 U.S.C. §§ 1395j—1395w, is a voluntary insurance program in which beneficiaries must first enroll to establish eligibility for benefits. Part B generally pays for the "reasonable charges" of physician and various health services. *Id.* §§ 1395k, 1395*l*, 1395x(s). Under Part B, Medicare pays 80 percent of the charges for those services covered under its regulations, to the extent that those charges are considered reasonable. The beneficiary is responsible for paying the remaining 20 percent of such costs. Unlike Part A, which is administered by fiscal intermediaries, Part B benefits are payed through insurance carriers, under contract with the Secretary. *Id.* § 1395u. The carriers set reasonable charges for Part B services pursuant to guidelines set forth in the Medicare statute and regulations. 42 C.F.R. § 405.501, *et seq.*

Institutional dialysis services, such as those provided by the plaintiffs in this action, are covered under Part B of the Medicare program. 42 C.F.R. §§ 1395x(s)(2)(F), 1395rr(b)(1). Institutional dialysis services furnished by freestanding renal dialysis facilities, such as the plaintiffs in this case, are required to be affiliated with a provider hospital's renal dialysis center. *Id.* §§ 405.2102(e)(2), 405.2160(a). The dialysis facility is reimbursed for its services through the provider hospital's intermediary, which functions as the facility's carrier under Part B. *Id.*

Again, unlike Part A, Part B does not provide for judicial review of claims arising under reimbursement amount determinations. The statute does provide for "a fair hearing by the carrier" if a dispute arises over payment on the basis of reasonable charges and the amount in controversy exceeds $100. 42 U.S.C. § 1395u(b)(3)(C). The decision of the hearing officer is "final

and binding upon all parties to the hearing." 42 C.F.R. § 405.835. Judicial review of this decision is foreclosed by statute. 42 U.S.C. § 405(h).

## THE FACTUAL BACKGROUND

Plaintiffs are suppliers of Part B services, including diagnostic laboratory tests furnished as part of plaintiffs' institutional dialysis services. Pursuant to 42 C.F.R. § 405.541(b), the intermediary servicing each of the plaintiffs' facilities has established the "reasonable charge" for all institutional dialysis services furnished by each facility. These intermediaries are guided in their determinations by the Renal Dialysis Facility Manual ("the Manual"). The portion of the Manual relevant to this case sets forth billing and reimbursement procedures for laboratory tests, including what is known as Activated Coagulation Time of Whole Blood Test ("ACT"). ACT is a bedside test sometimes used to monitor kidney dialysis patients. ACT is not necessary in every treatment, but provides a reliable and accurate method of monitoring blood clotting time during kidney maintenance dialysis treatment.

Prior to December, 1982, Plaintiff's allege that the Manual provisions allowed the dialysis facilities to bill ACTs separately from the basic dialysis treatment. They state that they were regularly reimbursed for ACT treatment in addition to the basic dialysis reimbursement. In December of 1982, HCFA published an intermediary letter, which stated that "routine laboratory services do not include hematocrits and clotting time tests ... as they are included in the basic dialysis charge regardless of frequency." This letter was then included as part of a revised Manual, without prior notice or public comment. The result of this new rule has been the termination of additional reimbursement for ACT tests.

## JURISDICTION OF THIS COURT IS NOT PRECLUDED BY 42 U.S.C. § 405(h) SINCE THIS IS AN ACTION TO "VINDICATE PROCEDURAL RIGHTS", AND NOT ULTIMATELY AN ACTION FOR ADDITIONAL REIMBURSEMENT.

■ Defendant cites *United States v. Erika,* 456 U.S. 201, 102 S.Ct. 1650, 72

L.Ed.2d 12 (1982) as being dispositive of this case. There, the Supreme Court, noting the plain language of 42 U.S.C. § 405(h), and the clear intent evidenced by the legislative history of that section, held that claims arising under Part B which seek redeterminations of reimbursement amounts were deliberately excluded from judicial review by Congress. The Secretary contends that this action is at bottom a claim for additional reimbursement under Part B, and, therefore, jurisdiction is precluded by the holding in *Erika.* Defendant would have this Court find that plaintiffs' procedural claims are "inextricably intertwined" with an underlying request for additional benefits. *Heckler v. Ringer,* — U.S. ——, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984). The defendant is just plain wrong as to this contention under *Erika* or *Ringer, supra.*

The Court does not agree with defendant's position on this issue. As Courts in this Circuit have held many times, 42 U.S.C. § 405(h) does not preclude judicial review of claims such as this which challenge the Secretary's compliance with the APA. *National Association of Home Health Agencies v. Schweiker* (NAHHA), 690 F.2d 932 (D.C.Cir.1982); *Humana of South Carolina, Inc. v. Califano,* 590 F.2d 1070, 1080 (D.C.Cir.1978); *National Association of Patients on Hemodialysis and Transplantation, Inc., et al v. Heckler* (NAPHT) No. 83–2210, 588 F.Supp. 1108 (D.D.C.1984); *Riverside General Hospital v. Schweiker,* 548 F.Supp. 1137 (D.D.C. 1982).

The determination as to whether § 405(h) applies in this case centers on whether the procedural issues raised are susceptible to being recast as a claim for reimbursement under Part B. *Riverside, supra,* at 1140. If the claim can be identified as one which "directly implicates the amount of Medicare reimbursement, the challenge becomes a 'claim' within the meaning of § 405(h)." *Id.* In the present case, however, the Court finds that the action arises not from a claim for additional benefits, but from a claim to "vindicate an interest in procedural regularity." *Humana, supra,* at 1080.

Plaintiffs here do not ask for any monetary award whatsoever. Their entire argument rests on whether the Secretary failed to comply with the APA's notice and comment provision. 5 U.S.C. § 553. Indeed, should plaintiffs prevail in this action the secondary result would not be an increase in their reimbursement amounts, but a return to the reimbursement levels which they received prior to the new rule being issued. Even then, this return to previous levels would at most be temporary, as plaintiffs do not dispute the rule itself, but the procedure under which the rule was promulgated, leaving the Secretary free to again issue the same rule at a later date following notice and comment. *NAHHA, supra,* at 938. Thus, plaintiffs' "ultimate goal" is procedural regularity, not increased benefits. *Id.; Riverside, supra,* at 1141. If defendants argument were to be accepted, it would mean that any procedural dispute which had even the most tangential affect on reimbursement amounts would be precluded from judicial review, thus in effect exempting the entire Medicare area from the provisions of the APA. This is certainly not what Congress envisioned, and not what the Courts have held. Therefore, neither the holding in *Erika* nor *Ringer* act as a bar to this Court's jurisdiction over what is basically a procedural claim.

THE RULE AT ISSUE WAS AN INTERPRETIVE RULE UNDER THE DEFINITION OF THAT TERM, AND THEREFORE THE APA'S NOTICE AND COMMENT REQUIREMENTS DID NOT COME INTO PLAY.

■ Having determined that jurisdiction over the procedural issue in this case exists, the Court finds that the rule at issue was interpretive in nature and in purpose, and therefore fell under the interpretive exception of the notice and comment provision of the APA. 5 U.S.C. § 553(b)(A). § 553 of the APA requires that all rules promulgated by an administrative agency "shall be published in the Federal Register," after which "the agency shall give interested persons an opportunity to participate through submission of written data,

views, or arguments." *Id.* §§ 553(b) and (c). The purpose of such notice and comment is "to curb bureaucratic actions taken without consultation and notice to persons affected." *American Academy of Pediatrics v. Heckler,* 561 F.Supp. 395, 398 (D.D. C.1983). § 553 provides for several exceptions to this general requirement of notice and comment, including an exception for interpretive rules. § 553(b)(A). Thus, the issue here is whether the Secretary's new rule, disallowing separate billing and reimbursement for ACT tests, was interpretive or substantive so as to bring the notice and comment provision into play.

The test in this Circuit of whether a rule is interpretive or substantive was laid out in *Gibson Wine Co. v. Snyder,* 194 F.2d 329, 331 (D.C.Cir.1952), and only recently affirmed in *Cabais v. Egger,* 690 F.2d 234, 237 (D.C.Cir.1982). "Substantive rules are those which create law, usually implementary to an existing law; whereas interpretive rules are statements as to what the administrative officer thinks the statute or regulation to mean." *Id.*

To apply this test, it first necessary to determine if there exists a law which the rule purports to interpret. As previously discussed, institutional dialysis services and diagnostic laboratory tests are covered under Part B of the Medicare program. 42 U.S.C. § 1395x. Reimbursement for these services are to be made on the basis of a "reasonable charge." *Id.* § 1395*l*. The statute vests broad discretion in the Secretary and the carriers administrating Part B to determine the actual reasonable charge for such services. *Id.* § 1395u(b)(3). Pursuant to this delegation of statutory authority, the Secretary has promulgated reimbursement regulations for institutional dialysis services furnished by free-standing dialysis facilities. 42 C.F.R. § 405.541. Reimbursement in this area is based on a "per treatment" approach. *Id.* These regulations specifically designate two tests, hematocrit and clotting time tests, as part of the basic dialysis treatment, and as "routine dialysis monitoring tests." *Id.* § 405.-2163(b). As such, the regulations require

that such tests be reimbursed as part of the basic dialysis treatment. *Id.*

Plaintiffs rely on the following provision in the old Manual as specifically allowing separate billing and reimbursement for ACT clotting time tests: "Renal dialysis facilities also may bill for hematocrit and clotting time tests performed by the renal facility's staff." (Manual § 207.1). This provision is at best ambiguous as to whether or not such tests may be billed separately, or whether clotting time tests may be billed as part of the overall dialysis charge. Taken alone, without a close reading of the regulations, plaintiffs' interpretation is viable. Indeed, as plaintiffs have noted, many carriers interpreted the provision in just that manner and allowed such tests to be billed separate from the overall charge. However, when this provision is seen in light of the applicable regulations it is clear that the Secretary did not intend this result, for it would be contrary to the regulations themselves. In fact, the interpretation opposite to that held by plaintiffs was used by many other providers, who included ACT tests in their overall charge. (Katz Affidavit ¶ 8) That this confusion existed, and the fact that the rule in question serves to clarify the area so as to bring all providers into one uniform procedure, shows this rule to be interpretive of existing law, and not a rule which in and of itself creates law. *Gibson, supra.* Since this rule is interpretive, the Secretary did not act improperly when she issued it without prior notice or opportunity for public comment.

Summary judgment will be granted for the defendant in this case. There are no genuine issues of material fact in dispute. Both parties agree what the old rule was, what the new rule stated, and that the new rule was issued without notice and comment. Plaintiffs had originally claimed, without proof, that all providers were billing ACT tests separately from the overall dialysis charge. The Defendant offered evidence that only some, not all, of the providers were so billing. (Katz affidavit ¶ 8). Plaintiffs have offered nothing which disputes the defendant's Statement of Materi-

al Facts. Therefore, there is nothing of a material factual nature in dispute.

Therefore, based on the arguments set forth herein, it is this 25th day of September, 1984

ORDERED that Plaintiffs' motion for summary judgement shall be denied, and it is

FURTHER ORDERED that Defendant's motion for summary judgement shall be granted, and it is

FURTHER ORDERED that this case shall stand dismissed, and the clerk shall remove it from the docket of this Court.