NATIONAL ASSOCIATION OF REHABILITATION FACILITIES, INC., et al., Appellants,

v.

Otis R. BOWEN, Secretary, Department of Health & Human Services, et al.

No. 87–5165.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 7, 1988.

Decided March 1, 1988.

Joe W. Fleming II, with whom Robert S. Hall, Jr., was on brief, for appellants.

Robert V. Zener, Atty., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty., and Robert S. Greenspan, Atty., Dept. of Justice, were on brief, for appellees.

Before RUTH BADER GINSBURG, WILLIAMS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

Concurring opinion filed by Circuit Judge WILLIAMS.

RUTH BADER GINSBURG, Circuit Judge:

Two institutional providers of Medicare program services and three national membership organizations composed of such providers or their employees commenced this action against the Secretary of the Department of Health and Human Services (HHS) seeking: (1) a declaration that the Prompt Payment Act, 31 U.S.C. §§ 3901 *et seq.*, which became effective October 1, 1982, applies to reimbursements to providers of medical services under the Medicare Act, 42 U.S.C. §§ 1395 *et seq.;* and (2) an injunction ordering the Secretary of HHS to comply with the Prompt Payment Act in his administration of the Medicare program. The complaint predicated subject matter jurisdiction exclusively upon 28 U.S.C. § 1331 (general federal question jurisdiction) and recited 28 U.S.C. § 2201 as the basis for the declaratory relief plea. The district court, denying plaintiffs' motion for summary judgment and granting defendant's motion to dismiss, held that the Prompt Payment Act "does not apply to reimbursements to providers under the Medicare Act." *National Ass'n of Rehabilitation Services v. Bowen,* No. 86–2386 (D.D.C. Mar. 18, 1987).[1]

We hold that plaintiffs have presented no "case of actual controversy," 28 U.S.C. § 2201, properly cognizable under the general federal question jurisdiction of the district court, 28 U.S.C. § 1331. Plaintiffs may not invoke 28 U.S.C. §§ 1331, 2201 for the adjudication of an "issue" and thereby circumvent the prerequisites to judicial review which would attend presentation of that issue in the context of a concrete claim. *See Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 164–65, 87 S.Ct. 1520, 1524–25, 18 L.Ed.2d 697 (1967) (adjudication in court generally should await administrative determination in concrete case). Accordingly, we vacate the district court's order ruling on the merits of the question plaintiffs tendered, and remand the case to that court with an instruction to dismiss the complaint for failure to present a claim for declaratory relief appropriately entertained under 28 U.S.C. §§ 1331, 2201.

Plaintiffs have underscored that their civil action is one in which "no [fact specific] claim is presented." Brief of Plaintiff-

---

1. The district court also stated: "Plaintiff [sic], in any event, has failed to exhaust its adminis- trative remedy." *Id.*

Appellants at 31.[2] Instead, they wish to litigate an "issue" in isolation: Does the Prompt Payment Act apply to the Medicare program? If the provider plaintiffs had presented "specific reimbursement claims," then concededly they would have been required to "resort to the process for administrative adjudication of claims under the Medicare Act" before any right to judicial review would accrue. *Id.; see also* Reply Brief at 9. Similarly, had plaintiffs pressed "express claims under contracts," they would have been obliged to contend with the claim filing and administrative process requirements of the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq. See* Brief of Plaintiff–Appellants at 30. By abstracting their Prompt Payment Act "issue," *see id.* at 31, for separate airing, plaintiffs believe they may avoid the preliminaries that would attend presentation of a fully fleshed-out case.

As precedent for their position, plaintiffs feature this court's decision in *National Ass'n of Home Health Agencies v. Schweiker,* 690 F.2d 932 (D.C.Cir.1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1193, 75 L.Ed.2d 438 (1983) (*NAHHA* ). See Reply Brief at 5–6. Plaintiffs in that case questioned the validity of a regulation by the Secretary requiring Medicare providers, many of whom had until then dealt directly with the Secretary, to resort instead to intermediaries for reimbursement determinations and payments. Holding the regulation reviewable under 28 U.S.C. § 1331, we rested our decision on two pillars. First, we explained that plaintiffs sought "no money at all," *i.e.,* monetary recovery was neither their immediate nor their "ultimate goal." 690 F.2d at 938. Second, and most prominently, we stressed that "no alternative form of judicial review" to test the regulation was available. *Id.* at 939. Moreover, greater fact particularization would not have advanced the court's analysis in *NAHHA.*

Just as it was plain that the *NAHHA* complainants "d[id] not seek any type of eventual monetary recovery," *id.,* so it is plain that money eventually is precisely what the providers in this case seek. Appellants themselves assert:

Medicare providers have a right to judicial review of PRRB (Provider Reimbursement Review Board) decisions in the United States District Court for the District of Columbia, 42 U.S.C. § 1395oo(f)(1), and thereby a right to appellate review in this Court. Accordingly, the judgment of this Court on the merits of this case would be a conclusive precedent.

Reply Brief at 9. But "conclusive precedent," we believe, is best reserved for declaration in an actual, specific, particularized controversy in which the court would be enlightened by the application of the Medicare Act's own prescriptions regarding payments and payment delays.

At oral argument of the instant appeal, counsel for the Secretary candidly pointed out that in *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), the Supreme Court held that 28 U.S.C. § 1331 accommodated a challenge to a regulation that did affect eventual monetary recovery by Medicare providers. The question in *Michigan Academy* was whether Congress had insulated against *any judicial review* regulations promulgated under Part B of the Medicare program. The regulation in question authorized payment of benefits in different amounts for similar physicians' services. The Medicare Act does preclude judicial review "for determinations of the amount of Part B awards." *United States v. Erika, Inc.,* 456 U.S. 201, 208, 102 S.Ct. 1650, 1654, 72 L.Ed.2d 12 (1982). Distinguishing challenges to the *method* by which such amounts are to be determined from the *determinations* themselves, the Supreme Court in *Michigan Academy* held

---

**2.** *See also* Reply Brief at 4 ("The Complaint ... does not allege any amount to be owing to any Medicare provider.... [T]he Secretary has been delinquent in the payment of Medicare billings under the standards of the Prompt Payment Act, but this action does not present any such claims."); Supplemental Brief of Plaintiff–Appellants at 2 ("[l]eaving aside the question of whether the instant case presents a 'claim' at all," it presents an "issue ... under the Prompt Payment Act").

the Secretary's regulation amenable to general federal question review.

*Michigan Academy* proceeded from "the strong presumption that Congress intends judicial review of administrative action," 106 S.Ct. at 2135, and concluded that "[the] presumption ha[d] not been surmounted." *Id.* at 2141. The *Michigan Academy* issue—whether Congress "intended that there be *no* forum to adjudicate statutory and constitutional challenges to regulations promulgated by the Secretary," *id.* at 2140 —is not presented here. Neither side in this case has urged that the Prompt Payment Act issue on which plaintiffs seek a ruling could not be adjudicated in another format or forum—in the context of a fact-specific claim. The Secretary maintains that all disputes over interest penalties under the Prompt Payment Act would be subject to the process established by the Contract Disputes Act,[3] while plaintiffs believe that, for Medicare providers, the PRRB is the proper starting place. Reply Brief at 6 ("[C]onsideration of disputes over interest penalties due to Medicare providers under the Prompt Payment Act would lie with the PRRB since any amounts found to be due would be reimbursed by the Medicare program."). We leave that matter for the day, case, and court in which it is properly framed for decision.

It is easier and quicker to frame "a pure issue of statutory law," Brief of Plaintiff–Appellants at 12, go directly to court, get the court's answer, and then plug that answer in as "conclusive precedent," Reply Brief at 9, in each concrete case. However, our federal court system traditionally sets precedent not in response to "pure" questions framed for or referred to federal judicial tribunals, but in the process of deciding fact specific, particular cases. We have in this instance no warrant to permit plain-tiffs to avoid the ordinary mode of gaining access to federal courts.[4]

For the reasons stated, the decision of the district court reaching the merits of this action is vacated and the case is remanded with an instruction to dismiss the complaint for failure to state a claim for declaratory relief properly cognizable under general federal question jurisdiction.

*It is so ordered.*

WILLIAMS, Circuit Judge, concurring:

So that users of Lexis and other indices can find this case while researching similar issues, I wish to mention the word exhaustion. It is the standard tag for the doctrine that I believe we are applying.

As we note, plaintiffs acknowledge the need to resort to administrative adjudication of claims under the Medicare Act where they present "specific reimbursement claims." Parts of their complaint quite clearly and literally trigger that doctrine; the provider-plaintiffs ask for an accounting for amounts due them on their legal theory. Joint Appendix at 7–8.

The only question that remains is whether those portions of the complaint asking for a pure legal opinion somehow avoid the need for exhaustion. It is hard to imagine why they would. It has never been suggested that parties may elect to by-pass administrative remedies simply by announcing their (momentary) lack of interest in specific facts. The grant of such an election would obviously undermine the doctrine's capacity to protect agency autonomy, which it accomplishes by enabling an agency to apply its discretion and expertise before a court appears on the scene. *See McKart v. United States,* 395 U.S. 185, 194, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194

---

3. The Secretary recognizes, however, that "[i]t might nevertheless be argued that [a] Prompt Payment Act claim [pended to a Medicare reimbursement claim] 'arises under' the Social Security Act, since the claim 'piggybacks' on Medicare claims, and payment of any interest penalty would have to be made from the Medicare Trust Funds. 31 U.S.C. § 3902(d)." Supplemental Memorandum for Respondents at 3.

4. Plaintiffs, we note, confront no requirement necessitating any "immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 153, 87 S.Ct. 1507, 1518, 18 L.Ed.2d 681 (1967).

(1969). The same value of course animates the doctrine of ripeness, as our opinion recognizes in the mention of *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164–65, 87 S.Ct. 1520, 1524–25, 18 L.Ed.2d 697 (1967) (preference for testing legal issue in concrete setting). Plaintiffs' ability to identify a legal issue that theoretically *could* be resolved in the absence of a specific factual context is not, standing alone, enough to dispense with the exhaustion requirement. *See McKart, supra* (relying on fact that the sole issue was purely one of law and on three other factors militating against requirement of exhaustion). Here, plaintiffs do not even claim that resolution of the core legal issue—application of the Prompt Payment Act to the Department's repayment obligations—will not be illuminated by a factual setting in which the operation of the Act can be contrasted with the payment rules of the Medicare program. They have shown no reason why we should dispense with the exhaustion requirement.