**EDGEPARK, INC., etc., Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

**NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Lawrence CRANE, et al., Defendants.**

Nos. C86–97, C87–2811.

United States District Court,
N.D. Ohio, E.D.

Oct. 9, 1990.

Kathleen Sutula, Asst. U.S. Atty., Cleveland, Ohio (Donna Morros Weinstein, Chief Counsel, Barbara F. Altman, Asst. Regional Counsel, Dept. of Health & Human Services, Chicago, Ill., of counsel), for the Secretary and (Nationwide Mut. Ins. Co. as the Medicare Part B carrier).

Frederick P. Vergon, Jr., Cronquist, Smith, Marshall & Weaver, Cleveland, Ohio, for Lawrence Crane, et al.

MEMORANDUM OF OPINION

KRENZLER, District Judge.

The above-captioned cases are related actions which originated in state court and were removed by the Secretary of Health and Human Services ("Secretary") to this Court.

Edgepark, Inc. ("Edgepark"), a Medicare supplier of durable medical equipment, ini-

tiated this legal battle against Nationwide Mutual Insurance Company ("Nationwide"), the Part B Medicare carrier for the State of Ohio. As the real party in interest, the Secretary has defended Nationwide on all counts and allegations involving the administration, implementation and processing of the Medicare regulations.

Specifically, throughout the various pleadings, Edgepark contended that its claims for Medicare reimbursement were improperly and dilatorily processed by Nationwide and that Nationwide's actions resulted in cash flow problems. Edgepark further alleged personal animus on the part of Nationwide which constituted intentional infliction of emotional distress.

Title XVIII of the Social Security Act, commonly known as the Medicare Act, codifies a program administered by the Secretary which provides medical insurance to aged and disabled citizens. The program is divided into two parts. Part A, not at issue in this proceeding, is financed by employment taxes and equal appropriations by Congress and provides insurance for hospital and related post-hospital services. 42 U.S.C. §§ 1395c–1395i-2. Part B, which is at issue here, is a voluntary program providing supplementary coverage for other health care services, including physician services and such services and such items as x-rays, laboratory tests, and durable medical equipment. 42 U.S.C. §§ 1395j–1395w. Benefits under Part B are paid out of a Medicare trust fund that is financed by government appropriations and premiums paid by eligible individuals who choose to enroll in the program. *See Schweiker v. McClure*, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982).

The Medicare Act authorizes the Secretary to delegate processing of Part B claims to private insurance carriers like Nationwide. 42 U.S.C. § 1395u. The carrier acts as the Secretary's agent in the review and payment of Part B claims. *Id.* The Secretary pays the administrative costs of the fiscal carriers and provides them with procedures and criteria for determining whether and the extent to which a claim should be paid. *Id.*

A claim for reimbursement under Part B may be submitted to the carrier by the beneficiary or, if the beneficiary has assigned his or her claim, by the physician or supplier who furnished the services. 42 U.S.C. § 1395u(b)(3)(B). A physician or supplier like Edgepark is not required to accept assignment, but if it does so, the assignee agrees, among other things, to accept the carrier-determined "reasonable charge" as its full charge for the service or item and not to charge the beneficiary other than the unmet yearly deductible applied to the reasonable charge and the coinsurance amount (20 percent of the remaining reasonable charge). 42 C.F.R. § 405.1675(a)(1)(i); *see* Exhibit A to the complaint ("Medicare Participating Physician or Supplier Agreement").

When a claim is submitted, either by a beneficiary or his assignee (collectively referred to here as a "claimant"), the carrier, as the Secretary's agent, must make an initial determination whether the services for which reimbursement is sought are covered by Part B and, if so, the amount payable. 42 U.S.C. §§ 1395u(a)(1)(A), (b)(3), 1395y(a); 42 C.F.R. § 405.803(b). When a carrier determines that Part B reimbursement for a claim is authorized and appropriate, it pays the claim with federal funds, either directly to the beneficiary or to the physician or supplier if the claim has been assigned. 42 U.S.C. § 1395u(b)(3)(B); 42 C.F.R. §§ 405.1672, 405.1675. Since the carrier makes all payments for Medicare Part B services on behalf of the Secretary, acting as a fiscal conduit of the Part B trust fund, the carrier has no direct financial interest in the reimbursement or nonreimbursement of claims.

If the claimant is dissatisfied with the carrier's initial determination, it is entitled to a "review determination" by another employee of the carrier who was not involved in the initial determination. 42 C.F.R. § 405.801(a). If a claimant is still dissatisfied with the disposition of a claim after the review, and the claim exceeds $100.00, the claimant is entitled to a "fair hearing" before a hearing officer who has

not participated in any prior review of the claim. 42 U.S.C. § 1395u(b)(3)(C); 42 C.F.R. §§ 405.820, 405.824. The hearing officer must be an attorney or other qualified individual who has thorough knowledge of the Medicare program and an understanding of medical matters; and the claimant is entitled to submit additional documentation, examine witnesses, and present argument. *See* 42 C.F.R. §§ 405.-823, 405.824, 405.830.

The hearing officer's decision is final and binding upon the claimant. 42 C.F.R. § 405.835. The claimant may not seek further administrative or judicial review.[1] *See United States v. Erika*, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982). The Supreme Court has held that the pre–1987 statutory scheme precludes judicial review of carrier determinations regarding beneficiary claims for such services and items under Part B, although it does not bar jurisdiction over challenges to the Secretary's regulations. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986); *United States v. Erika*, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982).

Moreover, the Medicare Act contains no provision for judicial review of *any* aspect of the relationship between a carrier and a claimant.

The Medicare statute fails to authorize further administrative review before the Secretary or judicial review of carrier decisions concerning coverage and reimbursement of services and items furnished prior to January 1, 1987. 42 U.S.C. § 1395u(b)(3)(C), 1395f(b) (Supp.IV 1986).

Carriers' duties as set forth by Congress in 42 U.S.C. § 1395u include determining and making payments on behalf of the Secretary to Medicare beneficiaries and suppliers of services, informing beneficiaries and suppliers of services of program requirements and "otherwise assist[ing] ... in discharging administrative duties necessary to carry out the purposes of this part (B of Title XVIII]." 42 U.S.C.

§ 1395u(a)(4). Charged with broad duties of administration of the Medicare Part B program according to the Secretary's strict requirements as set out in § 1395u and implementing regulations, the carrier functions as the Secretary's agent.

■ The carriers' role as agent is described in implementing regulations promulgated by the Secretary:

> Intermediaries and carriers *act on behalf of HCFA* in carrying out certain administrative responsibilities that the law imposes. Accordingly, their agreements and contracts contain clauses providing for indemnification with respect to actions taken on behalf of HCFA *and HCFA is the real party of interest in any litigation involving the administration of the program.*

42 C.F.R. § 421.5(b) (emphasis added). The plain meaning of these words cannot be ignored: the carrier (like the Part A intermediary) is the Secretary's agent and *whenever* the carrier's administration of the Part B Medicare program leads to its being named in a lawsuit HCFA (*viz.*, the Secretary) is the real party of interest.

The Supreme Court recognized this agency (as applicable to Medicare Part A intermediaries pursuant to the same regulation quoted above) in *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) ("Crawford County"). In *Crawford County*, the plaintiff's hospital provider of services attempted to invoke the equitable doctrine of estppel to prevent the Secretary from recovering overpayments made after his agent, the intermediary, erroneously told the provider that certain costs would be reimbursed by Medicare. Although the intermediary made the misstatements upon which the provider relied and the intermediary demanded repayment of the disputed amount, the Secretary was the proper party defendant. *Id.* at 2222–23 and n. 7. Throughout its opinion, in which it concluded that estoppel would not lie against the government, the Supreme

---

**1.** Except that with respect to services and items furnished on or after January 1, 1987, additional administrative and judicial review of Part B benefits may be held following exhaustion of the above-mentioned remedies.

Court assumed that the intermediary was the Secretary's agent and referred to it as such. *E.g., id.* at 2224, 2226 and n. 21, 2227, *et passim.*[2]

 Upon a careful review of the exhaustive briefing and voluminous discovery materials filed herein, it is clear that the allegations against Nationwide stem from Edgepark's dissatisfaction with the performance of Nationwide as the Medicare Part B carrier for the State of Ohio. Whether characterized as breach of contract or tort, Edgepark's complaints go to the speed and accuracy with which Nationwide determined amounts due and owing, and then paid, as Medicare reimbursement to Edgepark.

In *Michigan Academy,* the Supreme Court affirmed its holding in *United States v. Erika, Inc.,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), that Congress intended to preclude judicial review of Part B reimbursement claims. *Id.* The Court also held, however, that federal courts did have jurisdiction to adjudicate a challenge to the validity of one of the Secretary's Medicare Part B reimbursement regulations. *Id.* Here, Edgepark challenges the quality of Nationwide's execution of its duties to reimburse Medicare Part B claims in accordance with the Medicare Act, the Secretary's regulations, and the Secretary's instructions. However, carrier's execution of its duty to reimburse beneficiaries and their assignees is precisely:

> the kind of administrative action that ... [the Supreme Court] described in *Erika* as an "amount determination" which decides "the amount of the Medicare payment to be made on a particular claim and with respect to which the [Medicare] Act impliedly denies judicial review.

106 S.Ct. at 2139.

Indeed, none of plaintiff's allegations herein could be sustained absent a detailed review of Nationwide's processing of Edgepark's claims for Medicare reimbursement.

Rather, this Court would have to determine, *inter alia:*

1. Whether specific claims for Medicare reimbursement rebilled by Edgepark to Nationwide/Medicare should have been paid as originally billed;

2. Whether specific claims for Medicare reimbursement resubmitted by Edgepark to Nationwide/Medicare should have been paid as originally submitted;

3. Whether Edgepark's workforce was inflated by Nationwide's alleged failure to pay specific claims as originally billed or submitted; and

4. With respect to specific claims, how much Medicare reimbursement Nationwide *should have* paid Edgepark every month since 1981 so that Edgepark's cash flow would not have been impaired.

The determination of these issues as well as the global issues of (1) what constitutes "adequate and full" information to be conveyed to a Medicare supplier like Edgepark by a Medicare Part B carrier like Nationwide, and (2) what constitutes a "valid [Medicare] claim submitted in a timely and proper fashion" would indeed involve this Court in the administration of Part B of the Medicare Act.

This action constitutes an indirect attempt to challenge unreviewable Part B reimbursement decisions. Consequently, the Secretary is the real party in interest and since this Court lacks subject matter jurisdiction over such an action against the Secretary, the Secretary is entitled to summary judgment.

Judgment will be entered in the Secretary's favor on all claims against Nationwide and its officers.

**2.** Also, in *United States v. Erika,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), the Court noted that although plaintiff complained of *the carrier's* actions, the carrier was not made a party to the litigation because of 42 C.F.R. § 421.5(b)'s express statement as to "real party of interest in *any litigation involving* the administration of the [Medicare] program." 456 U.S. at 205 n. 4, 102 S.Ct. at 1652 n. 4 (emphasis added).