TEXAS MEDICAL ASSOCIATION, Travis County Medical Society, Texas Academy of Family Physicians, Texas Ophthalmological Association, Texas Society of Internal Medicine, Earl D. Bellamy, M.D., Leslie L. Cortes, M.D., Karlan June Lockey Downing, M.D., Pablo Garza, M.D., James M. Graham, M.D., John M. Haley, M.D., Craig K. King, M.D., William E. McCaleb, III, M.D., San Antonio Medical Associates, Roberto San Martin, M.D., Gordon W. Scott, M.D., Robert Frank White, M.D., Maggie M. Moore, Cleo Marie Gossett, Madeline C. Miles, and Raymond Conley, Community Administrator of the Estate of Ovetta Conley, Deceased, Plaintiffs,

v.

Otis R. BOWEN, M.D., Secretary, United States Department of Health and Human Services and Blue Cross and Blue Shield of Texas, Inc., Defendants.

Civ. No. A–87–CA–688.

United States District Court,
W.D. Texas,
Austin Division.

Nov. 2, 1987.

Findings of Fact and Conclusions
of Law Jan. 11, 1988.

**644**

Douglas J. Colton and Susan Koch, Wood, Lucksinger & Epstein, Washington, D.C., Phyllis B. Schunck, Wood, Lucksinger & Epstein, Austin, Tex., Gary W. Eiland, Wood, Lucksinger & Epstein, Houston, Tex., for plaintiffs.

Katherine Smith, Mark Marshall, Asst. U.S. Atty., Austin, Tex., for the Government.

Charlene Seifert and Jerry Sconce, Dallas, Tex., for defendants.

Donald P. Wilcox, Austin, Tex., for Texas Medical Ass'n.

Sam Stone, Austin, Tex., for Texas Ophthalmological Ass'n.

Robert M. Roller, Austin, Tex., Jack Ponder and Jan Newsome, Blue Cross and Blue Shield of Texas, Inc., Richardson, Tex., for Blue Cross–Blue Shield.

## ORDER

NOWLIN, District Judge.

Before the Court is Plaintiffs' Motion for Preliminary Injunction. The Court has considered the Motion, Defendants' response, Plaintiffs' reply, and all of the supporting briefs, affidavits, and documents submitted to the Court. A hearing was held on the Motion on October 29, 1987, at which time the Court entertained the argument of counsel. Based upon all of the information before it at this time, the Court is of the opinion that Plaintiffs are entitled to the issuance of a preliminary injunction.

Defendant Otis Bowen asserts that the Court is without jurisdiction, and in the alternative, that Plaintiffs have failed to exhaust administrative remedies and are prematurely before the Court. The Court is of the opinion that both of these arguments lack merit.

The Court is keenly aware of the four criteria which must be satisfied for Plaintiffs to be entitled to the issuance of a preliminary injunction. Plaintiffs must show: (1) a substantial likelihood that Plaintiffs will succeed on the merits; (2) a substantial threat that the Plaintiffs will suffer immediate irreparable injury if the preliminary injunction is not granted; (3) that the threatened injury to Plaintiffs outweighs the threatened harm to the Defendants; and (4) that the granting of the preliminary injunction will not disserve the public interest. *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir. 1985). The Court is of the opinion that Plaintiffs have met their burden on each criterion.

ACCORDINGLY, IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction is hereby GRANTED. Defendants are hereby ENJOINED from carrying out the program which they have denominated "the Overpayment Project" and from otherwise instituting recoupment actions against the Plaintiffs as a result of the alleged overpayments that were paid by Blue Cross and Blue Shield of Texas, Inc. with respect to certain claims made by the Plaintiffs for Medicare Part B reimbursement from July 1985 to March 1986.

IT IS FURTHER ORDERED that the preliminary injunction shall issue without bond.

The Court will shortly be issuing an order setting out findings of fact and conclusions of law in support of the granting of Plaintiffs' Motion for Preliminary Injunction.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Before the Court is Plaintiffs' Motion for Preliminary Injunction, as well as Defendant's response, and the supporting briefs and exhibits. A hearing on the Motion was held on October 29, 1987, at which time the Court orally granted Plaintiffs' Motion. An Order granting the Preliminary Injunction was entered on November 2, 1987. The following findings of fact and conclusions of law are entered in support of the Court's ruling.

The Texas Medical Association, Travis County Medical Society, Texas Academy of Family Physicians, Texas Opthalmological Association, Texas Society of Internal Medicine, and a number of physicians and patients have brought suit against Otis Bowen, Secretary of the United States Department of Health and Human Services (HHS), and Blue Cross and Blue Shield of Texas, Inc. (Blue Cross). Plaintiffs complain about Defendants' efforts to recoup monies that were paid to Plaintiffs in 1985 and 1986. Plaintiffs received these monies, Medicare Part B payments, for physician services rendered. Blue Cross is the carrier for HHS in Texas.

In July 1985, Blue Cross changed all of the codes for medical services from a Texas code to a federal code entitled HCFA (Health Care Financing Administration) Common Procedure Coding System (HCPCS). While making these conversions, Blue Cross encountered difficulty in matching the customary and prevailing charge data for 18 procedures to HCPCS codes. Therefore, Blue Cross chose to impose a statewide fee schedule for these procedures. HHS now claims that payments made under the fee schedule from approximately July 1985 to April or March 1986 were overpayments which they are entitled to recoup. Plaintiffs claim that the payments were proper and that Defendants cannot now recoup any portion of them. The recoupments at issue involve approximately 5,000 physicians, 15,000 beneficiaries, and an amount in excess of $13.3 million. While Plaintiffs seek certification of two classes, "the Nonassigned Beneficiary Class" and "the Assigned Physician Class," no class has been certified to date. Accordingly, the number of physicians and beneficiaries and the dollar amount involved in this cause at this time are less than stated above.

## I. JURISDICTION

Defendants challenge the Court's jurisdiction over this controversy. Therefore, the Court will consider its jurisdiction before considering the merits of the Motion for Preliminary Injunction. Defendants argue that Plaintiffs' claims are in essence a disagreement over the amount of benefits and, therefore, this Court is without jurisdiction pursuant to *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). Plaintiffs counter claiming that this dispute is a challenge to Medicare Part B reimbursement methodologies which *Michigan Academy* does not preclude federal courts from hearing.

In June 1986, the Supreme Court rendered the opinion of *Bowen v. Michigan Academy of Family Physicians*, which addressed "whether Congress, in either § 1395ff or § 1395ii of Title 42 of the United States Code, barred judicial review of regulations promulgated under Part B of the Medicare program." 106 S.Ct. at 2135. The Court noted a strong presumption that Congress intends judicial review of administrative action. *Id.* The earlier Supreme Court opinion of *United States v. Erika, Inc.*, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed. 2d 12 (1982), held that Congress' failure to authorize anything beyond carrier review of determinations of the amount of Medicare Part B awards provided persuasive evidence that Congress deliberately intended to foreclose further review of such claims. *Michigan Academy*, 106 S.Ct. at 2138. The Court in *Erika* reached this conclusion after examining the language of 42 U.S.C. § 1395u(b)(3)(C) and § 1395ff(b)(1)(C) and (b)(2). In *Michigan Academy*, the Court again examined these statutes and deduced that the statutory scheme:

> simply does not speak to challenges mounted against the *method* by which such amounts are to be determined rather than the *determinations* themselves.

*Id.* at 2138. The Court concluded that: those matters which Congress did *not* leave to be determined in a 'fair hearing' conducted by the carrier—including challenges to the validity of the Secretary's instructions and regulations—are not impliedly insulated from judicial review by 42 U.S.C. § 1395ff.

*Id.* at 2140. The Court further held that 42 U.S.C. § 1395ii which adopts 42 U.S.C. § 405(h) does not bar federal courts from

hearing statutory and constitutional challenges to regulations promulgated by the Secretary of Health and Human Services. *Id.* at 2140–41. Defendants claim that Plaintiffs' challenge "does not fall within the ambit of *Michigan Academy* ... because they have not challenged valid payment methodology which would have prospective effect on their reimbursement." Federal Defendant's Opposition to Plaintiff's Request for Preliminary Injunction, at 15. The First Circuit has ruled that *Michigan Academy* does not apply only to methodology challenges with a prospective effect, and this Court finds its reasoning persuasive. In *McCuin v. Secretary of Health and Human Services*, 817 F.2d 161, 165 (1st Cir.1987), the First Circuit stated:

> One feature of the present case, distinguishing it somewhat from *Michigan Academy*, bears mentioning. In *Michigan Academy*, the relief requested was purely prospective; the present case, however, was brought by an individual whose already awarded benefits were at issue. McCuin, however, has not sought review of the merits of her Medicare claim. Conceding that § 1395ff bars her from making such an argument, she has solely contested the propriety of the Secretary's reopening procedure. *Michigan Academy* makes no distinction between purely prospective challenges and challenges which have arisen in connection with a past claim but which are directed solely at the 'method' of determination; nor does the Court's reasoning in that opinion give any grounds for making such a distinction.

Accordingly, the fact that Plaintiffs' challenge will not have prospective effect on their reimbursement does not remove it from the holding of *Michigan Academy*.

■ The Court is not convinced by Defendants' argument that this is a dispute over the amount of payment rather than the methodology of payment. Defendants' counsel agreed with the Court at the October 29, 1987 hearing that disputes which ultimately affect the amount a beneficiary or physician receives can be disputes over either amount or methodology. Accordingly, the fact that the dispute at issue affects how much physicians and beneficiaries receive does not mean that it is a dispute over amount rather than methodology.

Plaintiffs complain of Defendants' decision that the carrier's use of a statewide fee schedule for eighteen Medicare Part B procedures was improper. Defendants used the fee schedule for a period of approximately eight months in making payments to physicians and beneficiaries for these eighteen procedures. The fee schedule was phased out in March or April 1986. More than one year later, Defendants decided that payments made under this fee schedule were improper, and that monies needed to be recouped from physicians and beneficiaries. In Defendants' counsel's own words, "the defendant Medicare fiscal carrier[ ] use[d] ... an invalid payment computation methodology for the period July 1985 through March 1986." Defendant's Opposition, at 1. This dispute centers upon whether the statewide fee schedule was a proper or improper payment methodology. As such, this Court has jurisdiction according to *Michigan Academy*.

Defendants also challenge jurisdiction on the basis that Plaintiffs have failed to exhaust administrative remedies. Plaintiffs concede that administrative remedies must normally be exhausted before a dispute will be ripe for resolution by a federal district court. They argue, however, that the exhaustion doctrine is not absolute. The Fifth Circuit acknowledges the following exceptions to the doctrine:

> [F]irst, exhaustion is not required when the prescribed administrative remedy is plainly inadequate because either no remedy is available, the available remedy will not give relief commensurate with the claim, or the remedy would be so unreasonably delayed as to create a serious risk of irreparable injury. ...
>
> *Second,* when the claimant seeks to have a legislative act declared unconstitutional and administrative action will leave standing the constitutional question, exhaustion is not required. ...
>
> *Third,* courts do not require exhaustion when the question of the adequacy

of the administrative remedy is for all practical purposes co-extensive with the merits of the plaintiff's claim, such as when, for example, the plaintiff contends that the administrative system itself is unlawful or unconstitutional in form or application....

*Fourth,* exhaustion of administrative remedies is not required if it would be futile to comply with the administrative procedures because it is clear that the claim will be rejected.

*Patsy v. Florida International University,* 634 F.2d 900, 903–04 (5th Cir.1981), *rev'd on other grounds,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (citations omitted) (cited with approval in *Hessbrook v. Lennon,* 777 F.2d 999, 1003 (5th Cir. 1985)). Plaintiffs contend that the first and fourth exceptions apply.

■ The Medicare Part B hearing process is a plainly inadequate remedy according to Plaintiffs because it cannot give relief commensurate with the claim. Plaintiffs also assert that it would be futile to comply with the administrative process because their claims would be rejected. Plaintiffs contend that a Part B hearing officer is without authority to decide that Blue Cross' use of a statewide fee schedule was a valid payment methodology. Title 42, C.F.R. § 405.860 (1986) establishes the authority of a hearing officer as follows:

The hearing officer in exercising the authority to conduct a hearing under section 1842(b)(3)(C) of the Act is to comply with all the provisions of title XVIII of the Act and regulations issued thereunder, as well as with policy statements, instructions and other guides issued by the Health Care Financing Administration in accordance with the Secretary's agreement with the carriers.

One guide is a compilation of instructions prepared by the Secretary and entitled the Medicare Carrier's Manual. The Manual provides, in pertinent part:

The [hearing officer] may not overrule the provisions of the law *or interpret them in a way different than HCFA does when he disagrees with their intent;* nor may he use hearing decisions

as a vehicle for commenting upon the legality, constitutional or otherwise, of any provision of the Act or regulations relevant to the Medicare Program.

Medicare Carrier's Manual § 12016 (1985) (emphasis added); *see also Michigan Academy,* 106 S.Ct. at 2138–39, 2139 n. 6; *Medical Fund–Philadelphia Geriatric Center v. Heckler,* 804 F.2d 33, 38–39 (3rd Cir. 1986). Defendant Bowen has clearly enunciated his opinion, both in oral argument and in his briefs, that the statewide fee schedule is illegal. Accordingly, the hearing officer would be bound by the Secretary's interpretation that the statewide fee was improper and could not provide the Plaintiffs the relief they seek, namely stopping recoupments from Part B Medicare payments which were made under the fee schedule. The Court is persuaded by Plaintiffs' argument, and finds that exhaustion of administrative remedies is an unnecessary predicate to this Court's jurisdiction.

## II. MOTION FOR PRELIMINARY INJUNCTION

Having resolved the jurisdictional issue, the Court moves on to the merits of the Motion for Preliminary Injunction. There are four prerequisites to Plaintiffs' entitlement to the issuance of a preliminary injunction:

(1) substantial likelihood that the moving party will ultimately succeed on the merits; (2) irreparable harm if the injunction is not issued; (3) the threatened harm to the moving party will outweigh any potential injury the injunction may cause the non-movant; and (4) the injunction will not disserve the public interest.

*Lindsay v. City of San Antonio,* 821 F.2d 1103, 1005 (5th Cir.1987). The Court has examined each of these elements and is satisfied that Plaintiffs have borne their burden of proof.

### A. *Substantial Likelihood of Success on the Merits*

■ Included in Plaintiffs' causes of action is a claim that Defendants have reopened Medicare Part B claims without authority to do so. If Defendants are with-

out authority to reopen the claims involving the eighteen procedures for which payments were made from July 1985 to April 1986 based on the statewide fee schedule, then Plaintiffs will prevail.

The regulations concerning reopening are codified at 42 C.F.R. § 405.841 (1986), and provide:

An initial or review determination of a carrier or a decision of a hearing officer may be reopened by such carrier or hearing officer:

(a) Within 12 months from the date of the notice of such initial or review determination or decision to the party to such determination or decision; or

(b) After such 12–month period, but within 4 years from the date of the notice of the initial determination to the party to such determination, upon establishment of good cause for reopening such determination or decision (see 20 CFR 404.958); or

(c) At any time, when:

(1) Such initial or review determination or decision was procured by fraud or similar fault of the beneficiary or some other person, or

(2) Such initial or review determination or decision is unfavorable, in whole or in part, to the party thereto, but only for the purpose of correcting a clerical error or error on the face of the evidence on which such determination or decision was based.

The parties agree that subsection (b) requiring a showing of good cause for reopening applies in this case. The disputed payments were made from July 1985 to April 1986 and recoupment efforts began in August 1987; therefore, a period of sixteen to twenty-five months is involved. Good cause is defined in section 12100.7 of the Medicare Carrier's Manual as follows:

'Good cause for reopening' under § 12100.2B exists where:

A. New and material evidence is furnished;

B. A clerical error has been made; or

C. There is an error on the face of the evidence on which such determination or decision is based.

Defendants claim that new and material evidence that the payment methodology was erroneous has been furnished and that evidence establishes good cause for reopening. "New and material evidence" is also a defined term:

Meaning of 'New and Material Evidence'.—Good cause exists for reopening a determination or decision within the period specified in § 12100.2B on the basis of new and material evidence even though the determination or decision when made was entirely reasonable based on the evidence then in file. New and material evidence includes any evidence which was not considered when the previous determination or decision was made and which shows facts that may result in a conclusion different from that reached in the determination or decision.

It is also possible that the evidence may justify or even require further development be undertaken before a proper revised determination or decision is made.

Medicare Carrier's Manual § 12100.8A (1985). The Court is of the opinion that Defendants' discovery that the use of the fee schedule was erroneous is not new evidence within the meaning of 42 C.F.R. § 405.841(b), but a new conclusion drawn from previously available evidence. Plaintiffs assert, and the Court agrees that:

No new evidence has surfaced that was not available or considered when the payment methodology determinations were made for claims submitted under the eighteen procedure codes. All information pertinent to the payment methodology determinations, including each Texas physician's historical customary charge data and the historical locality prevailing charge data, was available to [Blue Cross] and was considered by [Blue Cross] at the time the payment methodology determinations were made.

Plaintiff's Brief in Support of Motion for Temporary Restraining Order, at 29. Accordingly, the Court is of the opinion that Defendants did not have good cause to reopen the determinations made for Medi-

care Part B payments for the relevant eighteen procedures from July 1985 to April 1986. Accordingly, the Court finds that Plaintiffs have established a substantial likelihood of prevailing on the merits.

B. *Irreparable Harm*

■ Plaintiffs argue two theories of irreparable harm: (1) damage caused to the doctor-patient relationship caused by the letters HHS sent to patients claiming that the physicians had been overpaid, and (2) permanent loss of any monies recouped because the doctrine of sovereign immunity will bar future recovery of money damages from the Defendants. At the October 29, 1987 hearing, Defendants' attorney stated that they would not waive sovereign immunity. Transcript of October 29, 1987 Hearing, at 25. Defendants assert that if the Court determines that the payments made in 1985 and 1986 were proper, then Plaintiffs would have an available remedy. If those payments are not "overpayments" as Defendants claim them to be, then once the payments are reduced by recoupments, they would become "underpayments." Defendants state that they would then be obligated to increase the payments until they were no longer "underpayments." Defendants cite no regulations or statutes in support of this argument. The Court is not persuaded by Defendants' claims. The Court will not necessarily decide that the payments made in 1985 and 1986 were proper even if the Court ultimately determines that the payments cannot now legally be subject to Defendants' recoupment efforts. The Court may merely decide that Defendants have failed to show good cause for reopening the payment determinations. In that instance, Defendants could assert sovereign immunity if Plaintiffs tried to collect money damages for any amounts recouped by Defendants. Accordingly, the Court is of the opinion that Plaintiffs have demonstrated that the doctrine of sovereign immunity could cause them to permanently lose any monies now recouped. The Plaintiffs have met their burden of establishing irreparable harm.

C. *Balance of Harms*

Defendants argue that if a preliminary injunction issues, they will be harmed by delay in recovering funds that are rightfully theirs. They also claim that some physicians will no longer be participating physicians when this case is resolved. If Defendants prevail, these physicians will not be submitting assigned claims against which the carrier can recover the recoupments. Therefore, costly individual litigation against these physicians could result. The Court is not persuaded that these threatened injuries to Defendants outweigh the injury to Plaintiffs in the absence of an injunction.

D. *Public Interest*

Defendants argue that the injunction would disserve the public interest by allowing Plaintiffs to retain public funds. The Court is of the opinion that the public would be disserved more in the absence of an injunction. The public will be harmed in the absence of an injunction by Defendants recouping money from citizens with the risk that the money is wrongfully recouped and would not later be recoverable. Accordingly, the Court finds that the injunction will not disserve the public interest.

In conclusion, the Court is persuaded that Plaintiffs have established the four factors necessary for the issuance of a preliminary injunction.

ACCORDINGLY, IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction is hereby GRANTED. Defendants are hereby ENJOINED from carrying out the program which they have denominated "the Overpayment Project" and from otherwise instituting recoupment actions against the Plaintiffs as a result of the alleged overpayments that were paid by Blue Cross and Blue Shield of Texas, Inc. with respect to certain claims made by the Plaintiffs for Medicare Part B reimbursement from July 1985 to March 1986.

IT IS FURTHER ORDERED that the preliminary injunction shall issue without bond.