Ann **ROEN**, Myrl Jehoich, Dorothy Jehoich, Gwenyth Hochradel, C.T., Dr. Gerald Arne, and Dr. Patrick Napoli, Plaintiffs,

v.

Louis W. **SULLIVAN**, Secretary, United States Department of Health and Human Services, Defendant,

and

Share, Applicant for Intervention.

Civ. No. 4–90–729.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 24, 1991.

556

Paul M. Begich, Robin & Thompson, Wayzata, Minn. and William D. Hull, Timmer & Van Vliet, Minneapolis, Minn., for plaintiffs.

James R. Goeser, Asst. Regional Counsel, U.S. Dept. of Health and Human Services, Region V, Chicago, Ill., and Friedrich A.P. Siekert, Asst. U.S. Atty., D. Minnesota, Minneapolis, Minn., for defendant.

Keith H. Halleland and Leo J. Whelan, Popham, Haik, Schnobrich & Kaufman, Minneapolis, Minn., for party moving to intervene.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff chiropractors and enrollees in health maintenance organizations (HMOs) brought this action against the Secretary of Health and Human Services for declaratory and other relief under Part B of the Medicare program. Before the court are the motions of the Secretary to dismiss for lack of subject matter jurisdiction and for failure to state a claim, and of plaintiffs for partial summary judgment on Count I of their complaint.[1]

### I.

Plaintiffs Dr. Gerald Arne and Dr. Patrick Napoli are licensed chiropractors in the state of Minnesota. Plaintiffs Ann Roen, Myrl Jehoich, Dorothy Jehoich, and Gwenyth Hochradel are patients of Dr. Arne or Dr. Napoli, and are enrollees in Share. Plaintiff Charles Theraldson, identified in the case caption as C.T., is acting on behalf of his wife Ida who has assigned to him all her rights in this matter and who is an enrollee in Share. The five plaintiff enrollees allege that they have been denied a benefit they are entitled to under the Medicare statute; they also allege that the Secretary has issued regulations and followed policies which violate that statute and the United States Constitution. Plaintiff chiropractors allege that they have lost business because of the Secretary's regulations and policies. Collectively, plaintiffs seek extensive and detailed declaratory relief concerning provision of the benefit in question, including a declaration that plaintiff enrollees must receive the benefit, and a writ of mandamus compelling the Secretary to comply.

The Medicare program consists of two parts. Part A is a mandatory hospital insurance program covering inpatient hospital services and post-hospital care furnished by a skilled nursing facility or home health agency. 42 U.S.C. §§ 1395c–1395i. Individuals who are eligible for social security retirement or disability benefits are entitled to Part A coverage. 42 U.S.C. § 1395c. Part B is a voluntary program of supplemental medical insurance covering generally eighty percent of the "reasonable charge" for physician services and certain other medical and health services, such as outpatient hospital services, x-rays, laboratory tests, medical supplies, and durable medical equipment. 42 U.S.C. §§ 1395j–1395w. Part B benefits are financed by monthly premiums paid by Part A beneficiaries and other individuals age 65 or over who choose to enroll. Payment for a covered service or item in many instances may be made to the beneficiary directly or to the physician or other supplier to whom the beneficiary has assigned a claim for reimbursement. 42 U.S.C. §§ 1395l, 1395u(a), (b)(3)(B).

The Secretary, through the Health Care Financing Administration (HCFA), administers the Part B program generally through

---

1. Share, a Minnesota HMO which contracts with the Secretary to provide medical care under the Medicare program, has moved to intervene in this case and requested permission to join in the Secretary's motion to dismiss. The court granted Share permission to appear at the hearing for the limited purpose of supplementing argument regarding the Secretary's motion.

fiscal carriers that have contracted with the Secretary to administer the payment of qualifying claims. The carrier determines whether a claimed service or item is medically necessary and is covered by Part B, and establishes the "reasonable charge" that may be paid for covered services and items, utilizing criteria prescribed by statute and by the Secretary. 42 U.S.C. § 1395u(a), (c). Section 1876 of the Social Security Act establishing Medicare also authorizes the Secretary to enter into contracts with eligible HMOs or competitive medical plans (CMPs). 42 U.S.C. § 1395mm. Two types of contracts are authorized, "risk-sharing" and "reasonable cost reimbursement" contracts. Under risk-sharing contracts, the Secretary pays the HMO/CMP monthly in advance an amount determined under the terms of section 1876 on a capitation basis depending upon the number of its enrollees. Individuals are not paid directly, only the HMO/CMP. 42 U.S.C. § 1395mm(a)(6). Under reasonable cost reimbursement contracts, the Secretary pays the reasonable costs incurred by the HMO/CMP as actually incurred.

As with private medical insurance programs, the Part B Medicare statute and its implementing regulations set forth conditions and limitations on the coverage of services and items, and exclude certain services and items from coverage. The Part B program covers certain physician services. 42 U.S.C. §§ 1395x(s)(1), (2)(A). The statute defines "physician" to include five categories of professionals. 42 U.S.C. § 1395x(r). The first two of these categories, doctors of medicine or osteopathy and doctors of dental surgery or dental medicine, are not limited to performing services under only certain sections of the Medicare program. The next three are included within the definition of physician only for limited services pursuant to specific sections of the statute. These three are doctors of podiatric medicine, doctors of optometry, and chiropractors. The statute states that the term "physician" includes

(5) a chiropractor who is licensed as such by the State (or in a State which does not license chiropractors as such, is legally authorized to perform the services of a chiropractor in the jurisdiction in which he performs such services), and who meets uniform minimum standards promulgated by the Secretary, but only for the purpose of subsection (s)(1) and (s)(2)(A) of this section and only with respect to treatment by means of manual manipulation of the spine (to correct a subluxation demonstrated by X-ray to exist) which he is legally authorized to perform by the State or jurisdiction in which such treatment is provided.

42 U.S.C. § 1395x(r)(5). The HMO "must provide to members enrolled" in Part B Medicare, "those services covered under Part B ... which are available to individuals residing in the geographic area served by the [HMO]...." 42 U.S.C. § 1395mm(c)(2). An important limitation underlying all Part B coverage applies to all services provided to beneficiaries, whether or not provided through an HMO:

Notwithstanding any other provision of this title, no payment may be made under Part A or Part B for any expenses incurred for items or services ... which ... are not reasonable and necessary for the diagnosis and treatment of illness or injury or to improve the functioning of a malformed body member....

42 U.S.C. § 1395y(a)(1)(A). Thus the first threshold for coverage is that the service be medically reasonable and necessary; if so, then it may be provided by a physician, which may include any of the five categories described above.

HMO enrollees who believe they have been denied a covered benefit may seek review of that denial as provided in the statute and the Secretary's regulations. According to the statute, the enrollee is entitled to a hearing before the Secretary if the amount in controversy is $100 or more, and to judicial review of the Secretary's final decision if the amount in controversy is $1,000 or more. 42 U.S.C. § 1395mm(c)(5)(B). The scope of the hearing before the Secretary is detailed in 42 U.S.C. § 405(b). The scope of judicial review of the Secretary's final decision is detailed in 42 U.S.C. § 405(g). In addition,

the Secretary has promulgated regulations which set out the procedures for review as follows: (1) initial determination of coverage by the HMO, (2) reconsideration by the HMO, including the opportunity to submit evidence and allegations of fact and law, (3) review of the HMO's decision and reconsidered determination by the HCFA, (4) a hearing before an administrative law judge (ALJ), (5) review by the Appeals Council, and (6) judicial review. 42 C.F.R. §§ 417.-600–.638.

Plaintiffs allege that the five enrollees were denied the Part B Medicare benefit of a chiropractor providing manual manipulation of the spine to correct a subluxation demonstrated by x-ray to exist (the benefit). In support of this allegation, they have submitted affidavits from the five enrollees concerning their experiences at Share. Roen states that she wanted a referral from Share to a chiropractor to provide the benefit, but a nurse at the clinic told her, "We don't give referrals to chiropractors." Dorothy Jehoich states that she asked her Share medical doctor for a referral to a particular chiropractor, plaintiff Dr. Arne, and was told that "Share does not cover chiropractic services." Myrl Jehoich states that he tried to obtain a referral from his Share medical doctor to Dr. Arne, but the doctor refused. Hochradel states that she asked her Share doctor for a chiropractic referral and was told that "They [Share] do not cover chiropractic care." Hochradel then contacted Share consumer representative Joan McDonald, who told her, "No Share doctor will refer to a doctor of chiropractor. That is our policy." McDonald further stated to Hochradel that, "We will provide the therapeutic equivalent of that benefit through a non-chiropractic provider." Theraldson telephoned Share to ask his wife Ida's Share doctor to refer her to a chiropractor. The doctor was not available, and an administrator named Clare Shore eventually reported to him the

response of Assistant Administrator Taillefer that "It is our policy not to refer to chiropractors" and that "We do not have a working relationship with osteopaths." Theraldson appealed this decision to Share, also appealing the medical diagnosis of his wife's treating doctor at Share. At a hearing before Share's Consumer Affairs Board, the chiropractic referral appeal was denied.

Plaintiffs have also submitted the affidavits of Dr. Arne and Dr. Napoli. According to Dr. Arne, he has told Myrl and Dorothy Jehoich, patients of his, that in his opinion manual manipulation is a medically necessary treatment for them. According to Dr. Napoli, he has told Hochradel and Roen, patients of his, that in his opinion chiropractic manual manipulation is a medically necessary treatment for their back conditions.

In supplementary affidavits, Drs. Arne and Napoli state that their four plaintiff enrollees have subluxations of the spine demonstrated by x-ray to exist. There is no evidence that a Share doctor saw any of these x-rays or concluded that any of the four had a subluxation of the spine or that it was medically necessary to obtain the benefit (from a chiropractor or other medical provider).[2]

There is no evidence in the record that any of the plaintiff enrollees pursued any administrative appeals other than the actions described above.

## II.

Plaintiffs argue that their motion for partial summary judgment on Count I of their complaint should be granted based on the clear language of the Medicare statutes and congressional intent in adopting the statutes. They contend that their evidence shows plaintiff enrollees were denied the benefit, contrary to law. They seek the following order of the court:

---

**2.** The fifth plaintiff enrollee, Charles Theraldson claims that an unnamed chiropractor took x-rays of his wife Ida's back which showed a subluxation and disc degeneration. Theraldson does not state that his wife's Share doctor saw these x-rays or concluded that she had a sublux-

ation of the spine or that it was medically necessary to obtain the benefit (from a chiropractor or other medical provider). Neither chiropractor states that Ida Theraldson was one of their patients.

1. That manual manipulation of the spine to correct a subluxation as demonstrated by x-ray to exist is a Congressionally mandated Part B Medicare benefit.

2. The provisions of the Social Security Act and, in particular, 42 U.S.C. § 1395mm, require that the manual manipulation benefit must be provided to Plaintiff HMO/CMP Medicare enrollees by the Secretary of the United States Department of Health and Human Services.

Plaintiffs argue that this relief would reverse the present approach of the Secretary and his HMO agents, whose letters, documents, policy statements, regulations and improper administration of the HMO plans show that they maintain that the benefit is not required by the Medicare laws.

The Secretary raises essentially the same arguments in opposition to plaintiffs' motion for partial summary judgment as he does in support of his motion to dismiss. In addition, the Secretary argues that plaintiffs' motion is premature because he has not yet filed an answer (since he has filed a motion to dismiss) and has not had adequate opportunity to submit by affidavits, or otherwise, facts to oppose plaintiffs' motion.[3]

The Secretary raises four arguments in support of his position. First, the Secretary argues that the court does not have subject matter jurisdiction over this case because the plaintiffs have not exhausted their administrative remedies. Although the plaintiffs raise statutory and constitutional claims, the Secretary contends, their claims for benefits are inextricably intertwined with these procedural challenges; the benefit claims should go through the ordinary administrative process where plaintiffs are also free to raise their points of law.

Second, the Secretary argues that the plaintiffs do not have standing to bring this action. According to the Secretary, the plaintiff enrollees have not shown injury-in-fact as required for standing, since there is no evidence that they suffered from the malady for which they seek the benefit or that they were denied coverage by Share after following the proper administrative appeal procedures. The Secretary contends that the plaintiff chiropractors lack standing because they have not shown injury-in-fact[4] and because they are not within the zone of interests intended to be protected by the Medicare laws.

Third, the Secretary argues that plaintiffs should not receive their requested declaratory relief because the Medicare statute clearly provides that Medicare will reimburse only services and items which are "reasonable and necessary" for the patient. It would contravene this requirement for the court to order that plaintiff enrollees receive the benefit.

Finally, assuming subject matter jurisdiction, standing, and the appropriateness of the requested relief, the Secretary argues that plaintiffs have failed to state a claim upon which relief can be granted because of legislative reenactment. In 1990, according to the Secretary, Congress spoke to the very issues raised in plaintiffs' complaint, thereby adopting the Secretary's regulations (of which it was aware) and making it inappropriate to entertain this action.

Plaintiffs respond to the Secretary by arguing, first, that the court has subject matter jurisdiction because Congress has not unequivocatingly precluded judicial review of their substantive challenge to the Secretary's methods, practices, policies and

---

3. The Secretary contends that there may be genuine issues of material fact related to plaintiffs' motion for partial summary judgment, such as whether the plaintiff enrollees suffered subluxation of the spine demonstrated by x-ray to exist, whether plaintiffs' testimony is credible, and whether the administrative procedures would be futile. The Secretary argues that the likelihood of such disputed facts highlights the importance of the administrative appeals process which would develop a much more complete record for court review.

4. The Secretary relies on the allegations of the complaint to show this lack of injury-in-fact, arguing that standing should be decided on the complaint alone.

regulations; and the administrative appeals procedures could not be meaningful because the Secretary's policies make the conclusion inevitable. Second, plaintiffs argue that the complaint is sufficient to support their standing; if not, the evidence submitted with their motion for partial summary judgment shows standing, or they should be permitted leave to amend their complaint to cure any defects. Third, plaintiffs argue that the Secretary's position that the court should not make a medical necessity conclusion as to plaintiff enrollees is misplaced and applies only to Counts 2 through 9 of the complaint and it is Count 1 which is before the court. Finally, plaintiffs argue that Congress was not aware of the particular problems they complain about, and that its action was not a meaningful response to the Secretary's interpretation of the Medicare laws.

Share argues in support of the Secretary's motion to dismiss that it unequivocally does provide the benefit the plaintiffs are seeking. It notes that the plaintiffs' affidavits do not state that Share has deprived them of the benefit, but only that they have not been referred by Share to chiropractors to provide the benefit. Share contends that the benefits appeals process is not futile, and has submitted the affidavit of Kathleen Foley, Supervisor of Consumer Affairs at Share, who states that the appeals process has resulted in a significant number of reversals of decisions by Share on claims by Medicare enrollees, including reversals by the HCFA and by ALJs.[5]

### III.

After considering the arguments raised by the parties, the court concludes that it does not have subject matter jurisdiction because plaintiffs have failed to exhaust their administrative remedies. The statute authorizing the Secretary to enter into risk-sharing contracts with HMOs for Part B Medicare benefits provides a detailed administrative review procedure for enrollees who claim they have been denied a covered benefit. 42 U.S.C. § 1395mm(c)(5)(B). Judicial review is provided only upon a final determination by the Secretary. 42 U.S.C. § 405(g). The plaintiffs in this case have not followed this statutory procedure. There has been no final decision of the Secretary. Pursuant to Fed.R.Civ.P. 12(b)(1), the complaint should be dismissed. *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *St. Joseph's Hosp. of Kansas City v. Heckler,* 786 F.2d 848 (8th Cir.1986).

Plaintiffs argue that they should not be required to exhaust their administrative remedies because they are challenging the Secretary's policies and regulations, and that this is not a case where their claims to benefits are inextricably intertwined with their procedural challenge. Plaintiffs' request for relief in their motion for partial summary judgment belies this argument. While the first point of declaratory relief they request would order that the benefit is a congressionally mandated Part B Medicare benefit, the second point would order that the plaintiff enrollees must receive the benefit. Plaintiffs contend that no medical necessity determination is required to grant their motion, but the Medicare statute provides that no benefit be received unless reasonable and necessary. 42 U.S.C. § 1395y(a)(1)(A). The almost total lack of evidence as to plaintiff enrollees' medical condition highlights the importance of following the prescribed administrative procedures. A determination of their entitlement to the benefit can best be made by their HMO in the first instance, and by administrative review as set forth in the statute and regulations. The lack of a developed record means that plaintiffs in effect call upon the court to play doctor in

---

5. Foley states that from 1986 until November 1990, Share received at least 530 requests for reconsideration of initial determinations. Of these, 207 were submitted for reconsidered determination by the HCFA. The HCFA has decided 155 of the cases, upholding Share in 59 cases and wholly or partially overturning Share's decision in 96 cases. Eight cases have been brought to a hearing before an ALJ; six of these resulted in wholly or partially overturning Share's decision. No ALJ decision has been pursued through an action in federal district court.

their cases. The prescribed HMO and agency decisionmaking procedures were designed to avoid that problem.

That plaintiffs have intertwined procedural challenges with their claims for benefits does not change the outcome. As the Supreme Court noted in *Heckler v. Ringer, supra*, 466 U.S. at 614, 104 S.Ct. at 2021:

> It seems to us that it makes no sense to construe the claims of [those seeking a disputed benefit] as anything more than, at bottom, a claim that they should be paid [by Medicare] for [the disputed benefit]. Arguably respondents do assert objections to the Secretary's "procedure" for reaching her decision.... [H]owever, those claims are "inextricably intertwined" with respondents' claims for benefits.

*See also United States v. Bushman*, 862 F.2d 1327 (8th Cir.1988), *cert. denied,* — U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 21 (1989), *Hatcher v. Heckler*, 772 F.2d 427 (8th Cir.1985). Plaintiffs argue that under *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), procedural challenges to the Secretary's Medicare regulations and policies can be heard without prior exhaustion of administrative procedures. However, *Michigan Academy* was decided when the only administrative procedure available to claimants seeking any review of Part B Medicare decisions was a hearing before the HMO, which was bound to follow the Secretary's regulations, and there was no avenue for any judicial review of the HMO's decision. In this context, *Michigan Academy* provided access to court for Part B claimants raising procedural challenges. After the *Michigan Academy* decision, Congress amended the Medicare statute to authorize review of Part B claims by an administrative law judge with judicial review thereafter, adopting the same procedures for Part B claims as were already in place for Part A claims. Omnibus Budget Reconciliation Act of 1986, Pub.L. 99–509, sec. 9341, amending 42 U.S.C. § 1395ff. The same procedures are incorporated into the statute governing risk-sharing HMOs, *see* 42 U.S.C. § 1395mm(c)(5)(B). The procedures which caused concern in *Michigan Academy* are thus no longer operative, and the Court's concern that Part B claimants would have no judicial review of the carrier's decision is no longer applicable. Part B Medicare claimants now do have a meaningful forum to raise procedural challenges in conjunction with their benefits claims, and the right to judicial review (with sufficient amount in controversy) after a final decision of the Secretary. The Court's decision in *Ringer*, which concerned Part A Medicare benefits claims and procedural challenges, is now applicable to Part B claims as well. Plaintiffs' action should be dismissed for lack of subject matter jurisdiction for failure to exhaust administrative remedies.

Plaintiffs' argument that following the procedure would be futile is unpersuasive when they have not attempted to undertake the procedure and provide no evidence as to its futility. Charles Theraldson took his complaint the farthest by appealing the decision within the HMO, but he did not take the first step toward following the statutory procedure of administrative review by the HCFA or an ALJ. The affidavit of Kathleen Foley shows that for the majority of Share members who have pursued their administrative appeals, the process has not been futile but accorded at least some relief. If plaintiffs could show after completing the administrative process that they are in fact entitled to the benefit and that Share has systematically denied them the benefit at all stages of referral and reconsideration, then their futility argument would have more weight.

Plaintiffs have raised serious constitutional and statutory questions about the Secretary's policies with regard to HMOs and the benefit. Following the prescribed administrative procedures would be significant in this case, because the agency will develop the factual record so that the court will not have to decide the "important and difficult" questions of constitutional law devoid of any factual context. *Weyerhauser Co. v. Marshall*, 592 F.2d 373, 376 (7th Cir.1979), *quoting W.E.B. Dubois Clubs of America v. Clark*, 389 U.S. 309, 312, 88

S.Ct. 450, 452, 19 L.Ed.2d 546 (1967). In addition, the agency may decide favorably to the plaintiffs on other grounds, thus mooting the constitutional issues and relieving the court of the need to decide them. *Id.* Because of these concerns, and because plaintiff enrollees seek an order providing them with particular benefits, plaintiffs should follow the proper administrative procedures before bringing a complaint in federal district court. Until such time, the court does not have subject matter jurisdiction over their claims.[6]

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that plaintiffs' complaint is dismissed.

---

**6.** This conclusion renders moot the pending motion of Share to intervene and the pending appeal by the Secretary of an order of United States Magistrate Judge Bernard P. Becker. It also makes it unnecessary to address the other arguments raised by the parties.