McLAUGHLIN, Circuit Judge:
Plaintiffs are participants in the Medicare Part B program, 42 U.S.C. §§ 1395j-1395w-4. They presented claims for medical benefits to Empire Blue Cross and Blue Shield (“Empire”) and Blue Shield of Western New York (“BSWNY”); these are private insurance carriers with whom the government has contracted to administer the Part B claims process. Each plaintiff requested a “fair hearing” to review the award of benefits, and Hearing Officers (“HOs”) were assigned to conduct the hearings. Although such “hearings” are generally conducted solely on documentary evidence (called “OTRs” because they are based “on the record”), the HOs here declined several plaintiffs’ requests for OTR decisions and, instead, directed the plaintiffs to appear for “in-person” hearings where live testimony is taken. The HOs also rejected plaintiffs’ requests for orders directing BSWNY to produce documents concerning the calculation of reimbursement rates for certain anesthesia services. Believing that they had a right to OTRs and to discovery prior to their hearings, plaintiffs flatly refused to participate in the in-person hearings. In the face of their intransigence, the HOs either dismissed plaintiffs’ claims as abandoned, or, alternatively, ruled on the claims despite plaintiffs’ refusal to participate in the hearings.
Plaintiffs then sued in the District Court for the Southern District of New York (Robert L. Carter, District Judge) for declaratory, injunctive, and mandamus relief, alleging that the defendants, by failing to order discovery and to provide OTRs, violated both Medicare regulations and the plaintiffs’ procedural due process rights. The district court, in a decision reported at 788 F.Supp. 165, dismissed the complaint for lack of subject matter jurisdiction, holding (1) that it lacked federal question jurisdiction; (2) that it lacked jurisdiction under the Medicare Act because plaintiffs failed to exhaust their administrative remedies; and (3) that mandamus was inappropriate. We now affirm.
BACKGROUND
The Medicare program consists of two parts: Part A, 42 U.S.C. §§ 1395c-1395i-4, and Part B, 42 U.S.C. §§ 1395j-1395w-4. Part A, which covers hospital, as distinct from doctors’, bills, provides major medical insurance coverage for hospital care and related post-hospital services, and it is funded by Social Security taxes. Part B *40 addresses doctors’ bills and it establishes a voluntary, federally subsidized program of supplementary medical insurance for the aged and disabled, generally reimbursing participants (or their assignee health-care providers) 80% of the reasonable cost of certain doctors’ services, x-rays, lab tests, and other medical services. See generally Isaacs v. Bowen, 865 F.2d 468, 470 (2d Cir.1989) (discussing Medicare Part B reimbursement procedure). The Secretary of Health and Human Services (“HHS”) contracts with private insurance carriers (in this case Empire and BSWNY) who administer the Part B claims process. This lawsuit concerns Part B claims only.

Part B Claims Process

Participants in the Part B program present claims for medical benefits to the private carriers, who assign an employee to review them and determine benefit awards according to procedures established under the Medicare Act. The carrier then notifies the insured (or his assignee) of the result. If the claimant is dissatisfied with his award of benefits, he may request a “review determination” — a de novo evaluation of his claim by a different employee of the carrier. See 42 C.F.R. §§ 405.807, 405.810 (1991).
If the claimant is still dissatisfied with his benefits, and if the disputed amount of his claim exceeds $100, he may seek further review by requesting a “fair hearing” administered by a carrier-designated HO. See 42 U.S.C. § 1395u(b)(3)(C) (1988); 42 C.F.R. § 405.820 (1991). HOs are, in theory at least, independent of the carriers that appoint them, although HOs serve only at the grace of these carriers. See generally H.R.Rep. No. 727, 99th Cong., 2d Sess. 95 (1986), reprinted in 1986 U.S.C.C.A.N. 3607, 3685. A fair hearing may be conducted telephonically, in person, or on the record (“OTR”). See Health Care Finance Administration Medicare Carrier’s Manual (“MCM”) § 12013.1.
Regardless of the claimant’s desires, i.e. even if a claimant requests a telephonic or in-person hearing, the MCM requires the HO to furnish the claimant with an OTR before conducting a hearing, unless: “[t]he OTR would significantly delay the hearing; [t]he issue is medical necessity; [o]ral testimony and cross-examination is necessary to clarify the facts; or [the carrier] cannot provide a different HO for the requested hearing.” Id. § 12021.[1] This procedure was adopted because OTRs often provide claimants with the relief they seek and thereby obviate the need for — and the attendant delay and expense of — a telephonic or in-person hearing. See Human Resources Division, United States General Accounting Office, Part B Changes Appear to be Fulfilling Their Purpose 3 (No. 90-57 July 16, 1990). Indeed, most claimants will gladly forego telephonic or in-person hearings if their OTRs grant them substantially all the benefits they have requested. The fair hearing process concludes with the HO’s written décision, see 42 C.F.R. § 405.-834, which is “final and binding upon all parties to the hearing____” Id. § 405.835.
Prior to 1987,' the fair hearing was the last stop for Part B claimants disappointed with their benefits; further administrative or judicial review was foreclosed by statute. See United States v. Erika, Inc., 456 U.S. 201, 206-207, 102 S.Ct. 1650, 1653, 72 L.Ed.2d 12 (1982) (construing 42 U.S.C. § 1395ff (amended effective Jan. 1, 1987)). As discussed more fully below, however, Congress has since liberalized the Medicare Act so that Part B claimants claiming additional benefits over $500 are now entitled to further administrative review, with judicial review then available to claimants demanding over $1,000 of additional benefits. See Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99-509, § 9341, 100 Stat. 1874, 2037-38 (1986) (“1986 Amendments”) (codified at 42 U.S.C. § 1395ff).

*41
Plaintiffs’ Claims

Each of the plaintiffs is, or represents, a participant in the Medicare Part B program. Each filed a claim for medical benefits with Empire or BSWNY, and then requested a fair hearing. Yvonne S. Archer, Executive Director of the New York Federation of Anesthesiologists, represented the plaintiffs {pro bono) throughout the fair hearing process.
The parties have split the plaintiffs into three groups: Group A (Brewer, Kramer, Kuberski, Murch, and Pilicer) and Group C (Dowd, Goble, Macaluso, Salamone, and Viani) demanded OTRs prior to in-person hearings before HOs-defendants Heimberg and Woodson, respectively. The Group B plaintiffs (Abbey, Rogers, and Cirillo), who were also assigned to HOs Heimberg and Woodson, received OTRs, but requested document production (relating to the calculation of reimbursement rates for anesthesia services) prior to their in-person hearings.
HOs Heimberg and Woodson denied the A and C plaintiffs' requests for OTRs prior to their in-person hearings.[2] In response to these adverse (and allegedly unlawful) rulings, Archer did not appear at the A and C plaintiffs’ in-person hearings. Accordingly, the HOs dismissed their claims for abandonment, pursuant to 42 C.F.R. § 405.-832(b).
Heimberg and Woodson also rejected the Group B plaintiffs’ requests for discovery before their in-person hearings. Although Archer attended the hearings of Group B plaintiffs Abbey and Rogers, she refused to participate after HO Heimberg denied her renewed request for discovery. HO Heimberg, nevertheless, ruled on Abbey’s and Rogers’s claims, awarding them at least some of the benefits to which they claimed entitlement.
HO Woodson granted Archer’s request to adjourn Cirillo’s hearing while awaiting document discovery from BSWNY. As the complaint describes it, however, Cirillo’s case then tumbled into a bureaucratic abyss for nine months, with nary an act taken to resolve the claim — until this action was brought in July 1991.
Plaintiffs alleged in their complaint that the defendants violated both. Medicare regulations and the plaintiffs’ procedural due process rights. The gravamen of the complaint is that the plaintiffs were entitled to receive OTRs and discovery prior to their in-person hearings.
The .defendants moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction, and Judge Carter granted the motion, holding (1) that there was no federal question jurisdiction; (2) that there was no jurisdiction under the Medicare Act because plaintiffs failed to exhaust their administrative remedies; and (3) that mandamus was inappropriate.
DISCUSSION

Federal Question Jurisdiction

The parties disagree on whether the district court had federal question jurisdiction over plaintiffs’ complaint. Resolution of this issue requires us to determine if congressional amendments to the appeals process for Medicare Part B claims now require that such claims be reviewed in the same manner as Part A claims. We conclude that they do and, therefore, hold that the Social Security Act — to the exclusion of federal question jurisdiction under 28 U.S.C. § 1331 — provides the sole authority for exercising federal jurisdiction over Medicare Part B disputes. A little history may be helpful.
Before the 1986 Amendments, the Medicare statute provided administrative and judicial review of Part A claims (notably, not Part B) in the same manner as claims brought under Title II of the Social Security Act:
(1) Any individual dissatisfied with any determination under subsection (a) of this section as to— ...
(C) the amount of benefits under Part A ... of this subchapter (including a determination where such amount is *42 determined to be zero) ... shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.
42 U.S.C. § 1395ff(b) (1982) (amended effective Jan. 1, 1987). Compare Heckler v. Ringer, 466 U.S. 602, 605, 104 S.Ct. 2013, 2016, 80 L.Ed.2d 622 (1984) (review of Medicare Part A claims “available ... in the same manner as provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act”) with United States v. Erika, Inc., 456 U.S. 201, 208, 102 S.Ct. 1650, 1654, 72 L.Ed.2d 12 (1982) (no further review of determinations of the amount of Part B awards beyond the fair hearing) and Kuritzky v. Blue Shield of W. N. Y., Inc., 850 F.2d 126, 127-28 (2d Cir.1988) (per curiam) (HO is “the final arbiter of Part B benefit amount disputes”), cert. denied, 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 778 (1989).
Under the pre-1987 scheme of things, only Part A claims could be reviewed in . court and it was clear “that § 405(g), to the exclusion of 28 U.S.C. § 1331, [was] the sole avenue for judicial review for all ‘claim[s] arising under’ [Part A of] the Medicare Act.” Ringer, 466 U.S. at 614-15, 104 S.Ct. at 2021 (citing Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)) (construing 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii). Thus, by channelling Part A claims to the appellate mill established under Title II of the Social Security Act, Congress foreclosed judicial review of Part A claims pursuant to federal question jurisdiction. This limitation is significant because Title II requires would-be litigants to present their claims in the first instance to the Secretary, and, then, exhaust their administrative remedies before seeking judicial review. See 42 U.S.C. § 405(g); Mathews v. Eldridge, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976).
Plaintiffs quite correctly observe that, before 1987, certain Part B claims were cognizable under section 1331 to the extent judicial review was not implicitly precluded by the Medicare Act. Thus, determinations of benefit amounts were not reviewable, see Erika, 456 U.S. at 208, 102 S.Ct. at 1654, whereas “matters which Congress did not delegate to private carriers, such as challenges to the validity of the Secretary’s instructions and regulations, [we]re cognizable in courts of law.” Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 680, 106 S.Ct. 2133, 2141, 90 L.Ed.2d 623 (1986). The Court bottomed this conclusion — creating the so-called amount/methodology distinction — on “the strong presumption that Congress intends judicial review of' administrative action.” Id. at 670, 106 S.Ct. at 2135. We distilled " from Erika and Michigan Academy the principle “that federal jurisdiction exists where there is a challenge to the validity of an agency rule or regulation, but jurisdiction is lacking where the claim is merely that the insurance carrier misapplied or misinterpreted valid rules and regulations.” Kuritzky, 850 F.2d at 128 (citations omitted).
Relying on this distinction, plaintiffs maintain that the district court misapplied Michigan Academy and Kuritzky, urging us to hold that the district court had federal question jurisdiction over plaintiffs’ complaint. This argument need not detain us, however, “[b]ecause Congress has now brought Medicare part B disputes under the same regime as ones under part A,” thereby relegating to irrelevancy the Erika/Michigan Academy dichotomy. National Kidney Patients Ass’n v. Sullivan, 958 F.2d 1127, 1130 (D.C.Cir.1992).
The 1986 Amendments extended review under section 1395ff(b)(l)(C) to part B claims. The statute now provides that an individual dissatisfied with “the amount of benefits under part A or part B of this subchapter____shall be entitled” to further review as provided under Title II of the Social Security Act. 42 U.S.C. § 1395ff(b) (1988) (emphasis added). Accordingly, we agree with the only other Circuit to address this issue that “the special treatment of part B, based on the pre-October 1986 statutory differences, cannot survive the elimi *43 nation of those differences.” National Kidney Patients Ass’n v. Sullivan, 958 F.2d 1127, 1132 (D.C.Cir.1992); accord Roen v. Sullivan, 764 F.Supp. 555, 561 (D.Minn.1991); Oxygen Equip. Co. v. Sullivan, 1989 WL 107596, *3 (N.D.Ala. June 29, 1989), aff'd, 914 F.2d 268 (11th Cir. 1990); Colorado Clinical Labs., Inc. v. Newman, 1990 WL 282590, *5 (N.D.Tex. May 24, 1990). But see Griffith v. Bowen, 678 F.Supp. 942, 945 (D.Mass.1988) (indicating in dictum that the amount/methodology distinction for Part B claims survives the 1986 Amendments). Part B claims are now reviewed in the same manner as Part A claims so that the Social Security Act provides the exclusive authority for exercising jurisdiction over Part B disputes. See Ringer, 466 U.S. at 605, 104 S.Ct. at 2016.
Having' determined that the district court lacked federal question jurisdiction over plaintiffs’ complaint, we now consider whether jurisdiction was available under the Medicare Act, as amended.

Jurisdiction Under the Medicare Act

As discussed above, Title II of the Social Security Act serves as a template for review of Medicare Act claims. This is because of section 1395ff(b)’s incorporation by reference of 42 U.S.C. § 405(g), which provides:
Any individual, after any final decision of the Secretary made after a hearing to which he was a party, ... may obtain a review of such decision by a civil action ____brought in [a] district court of the United States____
42 U.S.C. § 405(g) (emphasis added). The Supreme Court has held that the “final decision” requirement has two elements, one jurisdictional (non-waivable) and one prudential (waivable). See Bowen v. City of New York, 476 U.S. 467, 483, 106 S.Ct. 2022, 2031, 90 L.Ed.2d 462 (1986), aff'g City of New York v. Heckler, 742 F.2d 729 (2d Cir.1984); Eldridge, 424 U.S. at 328, 96 S.Ct. at 899. The non-waivable, jurisdictional element is the requirement that a claim for benefits first be presented to the Secretary. The waivable, prudential element is the requirement that the administrative remedies prescribed by the Secretary be exhausted before judicial review is available.
The parties do not dispute that the plaintiffs did present their claims to the Secretary. Nor do they dispute that the Secretary has not waived the exhaustion requirement. Compare Weinberger v. Salfi, 422 U.S. 749, 766-67, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975) (Secretary deemed to have waived exhaustion). Thus, we must determine whether the plaintiffs have actually exhausted their administrative remedies, and, if not, whether judicial waiver of the exhaustion requirement is appropriate.
The type of review available to Part B claimants depends on the amount of benefits in dispute:
under part B of this subchapter, a hearing [before an ALJ] shall not be available ... if the amount in controversy is less than $500 and judicial review shall not be available ... if the aggregate amount in controversy is less than $1,000.
42 U.S.C. § 1395ff(b)(2) (1988); see also Isaacs v. Bowen, 865 F.2d 468, 471-72 (2d Cir.1989) (discussing review of Part B claims).
Paradoxically, the plaintiffs’ brief maintains that plaintiffs Brewer, Murch, Gable, and Salamone had claims for less than $500. The record, however, is silent about the actual amounts in controversy for these and all the other Group A and C plaintiffs. As to the Group B plaintiffs, the record does indicate that none of them demands additional benefits in excess of $500 on the claims at issue in this case. True, the statute permits claimants to aggregate their claims “if [they] involve the delivery of similar or related services to the same individual or involve common issues of law and fact arising from services furnished to two or more individuals.” 42 U.S.C. § 1395ff(b)(2) (1988). ■ The record, however, does not reveal whether these plaintiffs may aggregate their claims, and we find ourselves unable to determine whether they may have been entitled to do so. In sum, we cannot say whether any of the *44 plaintiffs had further administrative remedies available to them.
Putting the aggregation question aside, we conclude that none of the plaintiffs are entitled to judicial review of their claims. For those plaintiffs whose total amounts in controversy are less than $500, the statute bars judicial review; the plaintiffs whose claims exceed $500 have not exhausted their administrative remedies, and we conclude that judicial waiver of the exhaustion requirement is inappropriate.

The Exhaustion Doctrine

Although the exhaustion doctrine has the virtue of being flexible and “ ‘intensely practical,’ ” City of New York, 476 U.S. at 484, 106 S.Ct. at 2032, the doctrine has all the defects of its virtues. Its very malleability has produced a body of law notable for lack of clarity, consistency, and principle. See generally 4 Kenneth Culp Davis, Administrative Law Treatise § 26:1 (2d ed. 1983 & Supp.1989). Even so, we can distill from this morass some relevant precepts to enlighten our analysis,
Hoary ritual requires that we recite the criteria governing judicial waiver of the exhaustion requirement: (1) whether the claim is collateral to a demand for benefits; (2) whether exhaustion would be futile; and (3) whether the plaintiffs would suffer irreparable harm if required to exhaust their administrative remedies before obtaining relief. See City of New York, 742 F.2d at 736. Of course, these factors cannot be applied mechanically. See City of New York, 476 U.S. at 484, 106 S.Ct. at 2032. Rather, their application must “be guided by the policies underlying the exhaustion requirement.” Id.; see also McKart v. United States, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969) (application of exhaustion requirement “requires an understanding of its purposes”); New York v. Sullivan, 906 F.2d 910, 918 (2d Cir.1990) (exhaustion issues are resolved by “balancing the competing considerations to arrive at a just result”). Each decision essentially involves a judgment that weighs the utility of exhaustion against countervailing considerations like futility and irreparable harm. That said, we turn first to the reasons for exhaustion and, then, to the factors invoked by plaintiffs to support their claim for judicial waiver of the requirement.
Exhaustion is the rule, waiver the exception. See Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938); Weinberger v. Salfi, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975). This is so because of a variety of prudential and separation-of-powers concerns. See McKart, 395 U.S. at 193-95, 89 S.Ct. at 1662-63; Louis L. Jaffee, Judicial Control of Administrative Action 425 (1965). As “ ‘an expression of executive and administrative autonomy,’” McKart, 395 U.S. at 194, 89 S.Ct. at 1663 (quoting Jaffee, supra, at 425), one of the doctrine’s principal purposes is “preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors____” Salfi, 422 U.S. at 765, 95 S.Ct. at 2467; see also McKart, 395 U.S. at 195, 89 S.Ct. at 1663 (“notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors”).
Concern for administrative autonomy prompted the Supreme Court, in waiving the exhaustion requirement in City of New York, to distinguish the type of case we now confront:
This case is materially distinguishable from one in which a claimant sues in district court, alleging mere deviation from the applicable regulations in his particular administrative proceeding. In the normal course, such individual errors are fully correctable upon subsequent administrative review since the claimant on appeal will alert the agency to the alleged deviation. Because of the agency’s expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context. Thus, our holding today does not suggest that exhaustion is to be *45 excused whenever a claimant alleges an irregularity in the agency proceedings.
City of New York, 476 U.S. at 484-85, 106 S.Ct. at 2032; see also Mercer v. Birchman, 700 F.2d 828, 832 (2d Cir.1983) (Friendly, J.) (exhaustion required for challenge to procedural errors correctable by the agency).
Giving the agency first crack at correcting its own errors also conserves judicial resources. See McKart, 395 U.S. at 195, 89 S.Ct. at 1663. This interest in avoiding premature judicial intervention applies with even greater force when administrative resolution of plaintiffs’ claims may, as in this case, enable the agency to resolve the case on nonconstitutional grounds, a result generally favored by federal courts. See Public Utils. Comm’n v. United States, 355 U.S. 534, 539-40, 78 S.Ct. 446, 450, 2 L.Ed.2d 470 (1958) (“If ... an administrative proceeding might leave no remnant of the constitutional question, the administrative remedy plainly should be pursued.”); Jean v. Nelson, 472 U.S. 846, 854, 105 S.Ct. 2992, 2996, 86 L.Ed.2d 664 (1985); Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).
The policies favoring exhaustion are most strongly implicated by actions (like this one) challenging the application of concededly valid regulations. Plaintiffs' complaint, like the one at issue in Mercer v. Birchman, “does not attack procedures established by the Secretary, a course which ... might render futile the resort to internal remedies.” 700 F.2d at 833. Rather, the plaintiffs allege that the defendants failed to follow the Secretary’s procedures.
Judge Friendly observed in a similar context that:
[plaintiffs’] claims for Medicare benefits were the paradigm of those where resort to the internal procedures of the [Secretary] should be required____ Whereas Eldridge would have been asking the Secretary to change his regulations, [these plaintiffs] were asking him to enforce them____ No question of statutory validity as in Salfi, no attack on the Secretary’s prescribed regulations as in Eldridge, no conflict between the established procedures of cooperating agencies as in Ellis v. Blum [643 F.2d 68 (2d Cir.1981) ] rendered illusory the prospect of an administrative remedy for the wrongs these plaintiffs allege so as to justify resort to the courts before exhaustion.
Mercer, 700 F.2d at 832; see also City of New York, 476 U.S. at 484-85, 106 S.Ct. at 2032 (agency’s “mere deviation' from the applicable regulations____[is] fully correctable upon subsequent administrative review since the claimant on appeal will alert the agency to the alleged deviation").
Plaintiffs argue that further administrative review would have been futile because an ALJ could not restore “their valuable procedural right to avoid an in-person hearing.” Futility is of course one criterion militating against requiring exhaustion. See City of New York, 742 F.2d at 736. But saying that exhaustion would be futile is merely another way of stating that the policies underlying the exhaustion requirement do not apply in a given case. Thus, for example, the policy of permitting an agency to correct its own errors is chimerical when the challenge is to regulations promulgated and consistently enforced by the agency, and which the agency has either no power, or no inclination, to correct. See, e.g., Eldridge, 424 U.S. at 330-31, 96 S.Ct. at 900; Salfi, 422 U.S. at 765-66, 95 S.Ct. at 2466-67; Marcus v. Sullivan, 926 F.2d 604, 614 (7th Cir.1991). In this context, exhaustion would serve no legitimate purpose, i.e., it would be futile.
Plaintiffs do not suggest that exhaustion would be futile because the Secretary’s procedures are infirm, or because the Secretary has adopted a clandestine policy that violates the Medicare Act. Compare City of New York, 476 U.S. at 485, 106 S.Ct. at 2032; Marcus, 926 F.2d at 614. Instead, they allege that their HOs violated valid Medicare regulations. This difference is crucial because it distinguishes this case — and these plaintiffs’ allegations of futility — from the Eldridge, Salfi, and City of New York line of cases.
*46 As the plaintiffs explain it, their right to a pre-hearing OTR carries in its wake a right not to proceed with the administrative process. That is, if they are forced to proceed with the administrative process, they will forever be denied the “right”— represented by the requirement that they receive a pre-hearing OTR — to avoid the delay and expense of pursuing their claims beyond the OTR stage. While this argument has some facial appeal, it is analytically indistinguishable from a litigant’s demanding interlocutory review of a district court’s denial of a motion to dismiss or for summary judgment. Utterly convinced of his position, such a litigant would indignantly insist that we correct the district court’s error, lest his “right” to avoid costly and time-consuming litigation be irretrievably lost. We would, of course, dismiss such an appeal and require the litigant to proceed in the district court. The same principle applies here. See McKart, 395 U.S. at 194, 89 S.Ct. at 1662; Tatara-nowicz v. Sullivan, 959 F.2d 268, 274 (D.C.Cir.1992).
It is the well-established rule “that the mere trouble and expense of defending an administrative proceeding is insufficient to warrant judicial review of the agency’s action prior to the conclusion of the administrative proceeding. Other factors must be present in addition to this, injury before judicial review will be considered appropriate.” Central Hudson Gas & Elec. Corp. v. EPA, 587 F.2d 549, 559 (2d Cir.1978) (citation omitted); see also Sampson v. Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974); Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 23-24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974); Petroleum Exploration, Inc. v. Public Serv. Comm’n, 304 U.S. 209, 222, 58 S.Ct. 834, 841, 82 L.Ed. 1294 (1938); Small v. Kiley, 567 F.2d 163, 165 (2d Cir. 1977) (per curiam). In the Medicare context, the “other factors” that might justify waiving the exhaustion requirement have been examined variously under the rubric of futility or irreparable harm. For example, if requiring costly and time-consuming exhaustion of the administrative process would be demonstrably sterile, then the exhaustion requirement may be waived. See, e.g., Mathews v. Diaz, 426 U.S. 67, 76, 96 S.Ct. 1883, 1889, 48 L.Ed.2d 478 (1976) (exhaustion futile because Secretary has no power to rule on constitutionality of statute at issue); Tataranowicz, 959 F.2d at 274 (“Secretary gives no reason to believe that the agency machinery might accede to plaintiffs’ claims”); Ellis v. Blum, 643 F.2d 68, 78 (2d Cir.1981) (“it would be foolish to expect the Secretary in an adjudicatory administrative proceeding to take steps to remedy what plaintiff alleges to be a full-blown policy of the state defendants of issuing deficient pretermination notices”). Or if the delay attending exhaustion would subject claimants to deteriorating health, because the Secretary has altogether denied them benefits, then waiver may be appropriate. See Ringer, 466 U.S. at 618, 104 S.Ct. at 2023; Marcus, 926 F.2d at 614; Bartlett v. Schweiker, 719 F.2d 1059, 1061-62 (10th Cir.1983). If these other factors are not in the equation, however, the expense and delay of completing the administrative process will not ordinarily justify waiver.
Plaintiffs do not complain that they have been totally denied benefits. In fact, they have already received a substantial portion of the benefits to which they claim entitlement. Nor do they allege that an erroneous denial of some portion of their claim could not be remedied by retroactive payment of these benefits. Rather, the plaintiffs’ argument that we should waive the exhaustion requirement rests on the assumption that an erroneous denial of pre-hearing OTRs and discovery deprives them of a right not to pursue the administrative process. There is no such right, and the delay and expense of the administrative (or litigation) process do not excuse compliance with that process. Accordingly, waiver of the exhaustion requirement is inappropriate.
In reaching this conclusion, we remain sensitive to plaintiffs’ allegations. The record, limited though it is at this stage of the proceedings, raises serious questions about whether HOs Heimberg and Woodson knowingly disregarded the Secretary’s reg *47 ulations. Indeed, we would have a very-different case if there were allegations that the Secretary had acquiesced in the carriers’ undisclosed policy of not providing pre-hearing OTRs, as the Secretary’s regulations generally require. Plaintiffs’ complaint, however, challenges the application (or non-application) of concededly valid regulations and this is the paradigm for requiring exhaustion. In sum, we have no reason to expect that the Secretary, on further review, will refuse to do what the law requires of him: to ensure that carriers comply with the Medicare Act and regulations thereunder, and, when they do not, to. take appropriate steps to see that they do. Compare City of New York, 476 U.S. at 485, 106 S.Ct. at 2032 (exhaustion waived where Secretary has adopted clandestine policy that violates the Medicare Act).

Mandamus Relief

Our holding that the plaintiffs must exhaust their administrative remedies also disposes of plaintiffs’ alternative argument for mandamus relief because one of the requisites for obtaining a writ of mandamus is that the plaintiff have exhausted all other adequate remedies. See City of New York, 742 F.2d at 739; Billiteri v. United States Bd. of Parole, 541 F.2d 938, 946 (2d Cir.1976). Furthermore, the HOs’ duty to provide pre-hearing OTRs is not so clearly non-discretionary as to justify the extraordinary remedy of mandamus. See Pittston Coal Group v. Sebben, 488 U.S. 105, 121, 109 S.Ct. 414, 423, 102 L.Ed.2d 408 (1988); Heckler v. Ringer, 466 U.S. at. 616, 104 S.Ct. at 2022.
CONCLUSION
In sum, we hold that the 1986 Amendments to the Medicare Act require that Part B claims be reviewed in the same manner as Part A claims. Thus, the Medicare Act, to the exclusion of 28 U.S.C. § 1331, is the sole source of federal court jurisdiction over Part B disputes. We find that plaintiffs have not exhausted their administrative remedies, and that judicial waiver of the exhaustion requirement is inappropriate in this case. Because plaintiffs had an adequate remedy to redress the defendants’ alleged procedural violations, mandamus relief is not warranted. Accordingly, the judgment of the district court is affirmed.

. The defendants are correct that the MCM vests HOs with discretion not to provide pre-hearing OTRs, a factor that would be important in analyzing the merits of plaintiffs’ due process claims. See Mathews v. Eldridge, 424 U.S. 319, 349, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976). Because we find the jurisdictional claims dis-positive, we need not address the merits of the due process argument.

. Although plaintiffs’ complaint classified Brewer as a Group A plaintiff, he received an OTR prior to his in-person hearing. Only Brewer’s request for a second, amended OTR was denied.